Aurora National Bank, as Guardian of the Estate of Marilou Laughlin, a Minor, Plaintiff-Appellant, *v.* Kathryn E. Anderson, as Admrx. of the Estate of Edwin Anderson, *et al.,* Defendants-Appellees.

(No. 70-160;

Second District—March 29, 1971.

Dreyer, Foote & Streit, of Aurora, for appellant.

Gates W. Clancy and James S. Mills, both of Geneva, for appellees.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Plaintiff appeals the granting of a motion for summary judgment, the basis of which was the ruling of the trial court that Iowa law prohibited a suit between parent and child for willful and wanton conduct when all parties to the suit were Illinois residents and the accident took place in Iowa.

Plaintiff contends that Illinois law governs parent-child actions of this type, regardless of where the injury occurred. Plaintiff contends further that neither Iowa substantive law, nor Iowa conflict law supports the ruling granting summary judgment.

On the other hand, defendant contends that summary judgment was proper because the substantive law of the situs prohibited a suit by an unemancipated child against her parent. He also contends that Iowa conflict law is irrelevant to the case.

The facts of the case may be simply stated. Marilou Laughlin, an unemancipated minor, was a passenger in a car driven by her mother, Lucille Laughlin, which was involved in an accident with a car driven by Edwin Anderson. All three people were residents of Illinois. The accident occurred in Iowa. The Aurora National Bank, as guardian of the estate of Marilou Laughlin, sued Kathryn E. Anderson as administratrix of the estate of Edwin Anderson, who died as a result of the accident, alleging negligent conduct and Lucille Laughlin, alleging willful and wanton conduct. The trial court granted summary judgment in favor of Lucille Laughlin and stayed all proceedings against Kathryn E. Anderson pending this appeal.

While the exact question present by this appeal has not been considered previously by the courts of this State, the decisions by the Supreme Court of Illinois, and the courts of other states, provide ample guidance for our decision.

Neither side cites any Iowa case which discusses parent-child suits for willful and wanton misconduct and our research reveals none. In *Barlow*

*v. Iblings* (Ia., 1968), 156 N.W.2d 105, the Supreme Court of Iowa, after an extensive review of authorities, restated its position that parent-child suits concerning ordinary negligence are not permissible in Iowa. While the language of *Barlow v. Iblings* gives some support to the argument that Iowa might permit suits for willful and wanton misconduct, we will, for the purpose of this opinion, assume that Iowa policy would not permit such suits between Iowa residents.

■■ It is clear that Illinois law permits parent-child suits for willful and wanton conduct. (*Nudd v. Matsoukas* (1956), 7 Ill.2d 608.) It is also clear that Illinois permits interspousal suits for willful and wanton conduct where the accident occurred outside of Illinois. In *Wartell v. Formusa* (1966), 34 Ill.2d 57, Illinois residents were involved in an accident in Florida. The husband died in the accident and the wife sued the executor of her husband's estate in Illinois. The court characterized the question of capacity to sue as one of family law and not of tort law. It said, at p. 59:

"In our opinion, the law of Illinois clearly applies in this case. We can think of no reason why Florida law should control the question whether a husband and wife domiciled in Illinois should be able to maintain an action against each other for a tort committed during coverture. The fact that the alleged tortious act took place in Florida is of no significance in determining which law should govern the determination of this issue. The law of the place of the wrong should of course determine whether or not a tort has in fact been committed, but the distinct question of whether one spouse can maintain an action in tort against the other spouse is clearly a matter which should be governed by the law of the domicile of the persons involved. Here the domicile is Illinois. Illinois has the predominant interest in the preservation of the husband-wife relationship of its citizens, and to apply the laws of Florida to the question of whether interspousal tort suits may be permitted between Illinois residents would be illogical and without a sound basis. This position has been adopted by the Restatement Second of Conflict of Laws, Tentative Draft No. 9, par. 390g, which provides in part that 'whether one member of a family is immune from tort liability to another member of the family is determined by the local law of the state of their domicile.'"

In support of its decision in *Wartell*, the court cites, without differentiating, *Emery v. Emery* (1955), 45 Cal.2d 421, 289 P.2d 218. In that case the court considered both a father-daughter suit and a brother-sister suit. The family members were California residents and the accident in question occurred in Idaho. The court applied Idaho law to the question of whether the complaint stated a cause of action, but California law to the

question of capacity of the daughter to sue the father. The court stated: "\* \* \* We think that disabilities to sue and immunities from suit because of a family relationship are more properly determined by reference to the law of the state of the family domicile. That state has the primary responsibility for establishing and regulating the incidents of the family relationship and it is the only state in which the parties can, by participation in the legislative processes, effect a change in those incidents. Moreover, it is undesirable that the rights, duties, disabilities, and immunities conferred or imposed by the family relationship should constantly change as members of the family cross state boundaries during temporary absences from their home." 289 P.2d 223.

See, Annot., 96 A.L.R.2d 973.

■■ We think that the question of capacity to sue in a parent-child suit for willful and wanton conduct, is properly characterized as a question of family law and not of tort law. As in the case of interspousal suits, Illinois has the predominant interest in the preservation of the parent-child relationship of its residents. It is our internal policy that "[T]o tolerate such misconduct and deprive a child of relief will not foster family unity but will deprive a person of redress, without any corresponding social benefit, for an injury long recognized at common law." (*Nudd v. Matsoukas, supra,* 619.) Our external policy, however, should not deprive a child, domiciled in this State, of redress available to him had the injury occurred in Illinois, merely because the injury occurred outside this State.

We need not rely solely on our characterization of capacity to sue as a question of family law. We would reach the same conclusion were we to consider it as a tort question. The tort standard was set forth in *Ingersoll v. Klein* (1970), 46 Ill.2d 42, a wrongful death action. The court states, at p. 45:

"\* \* \* In our opinion, the local law of the State where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the occurrence and with the parties, in which case, the law of Illinois should apply." The court further states that, among the considerations to be employed in determining which state has the more significant relationship, should be the place where the injury occurred, the place where the conduct occurred, and the place where the relationship of the parties is centered, and says that the forum must also consider the issues, the character of the tort and the relevant purposes of the tort rules of the interested states. Tentative Draft No. 9 of Sec. 379, Restatement of the Law 2d, Conflicts of Laws quoted in *Ingersoll v. Klein, supra* at 47.

Applying these considerations to the case at bar, we find that Illinois has a more significant relationship with the occurrence and with the parties. All parties were Illinois residents. Illinois policy is to permit Illinois children to recover from their parents for willful and wanton misconduct. Iowa policy is directed toward preserving the family relationship of its residents, but the sole relationship with Iowa was that the injury occurred there.

Due to our holding that Illinois law applies, there is no need for this Court to apply the *renvoi* doctrine as suggested by the plaintiff. For a criticism of such doctrine see, *Haumschild v. Continental Casualty Co.* (1959), 7 Wisc.2d 130, 95 N.W.2d 814 and 16 Am.Jur.2d, Conflicts of Laws, Sec. 2.

Defendant argues that *Wartell v. Formusa* should be limited to its facts. Defendant says that the case involved a determination of the applicability of an Illinois statute and a Florida statute, and that it is hardly surprising that the court applied the express codified public policy of this State in place of the law of another State. Defendant then argues that since there is no similar strong Illinois public policy against parent-child suits, Iowa law should apply to the case at hand.

We find no merit to this argument. The Florida law in question in *Wartell* was common law, not statutory. The court was faced with a challenge to the constitutionality of both laws and could easily have analyzed each separately, or stated that Illinois policy required the application of Illinois law. Instead, it chose to look to the basis of interspousal immunity for application of the law of the domicile. Furthermore, subsequent Illinois decisions have not limited the case to its facts. *Graham v. U.S. Grant Post* (1969), 43 Ill.2d 1, 5.

Defendant's contention that the record does not contain sufficient information for this court to reach a decision is also without merit. The only facts upon which we have relied are that Marilou Laughlin was Lucille Laughlin's daughter, that all three people were Illinois residents and that the accident occurred in Iowa. These facts are clearly present in the record.

The decision of the trial court, granting the motion for summary judgment, is reversed and the case is remanded for further proceedings.

Reversed and remanded.

SEIDENFELD and GUILD, JJ., concur.