Patricia Marie HUFF,
Plaintiff-Appellant,

v.

David LaSIEUR, Defendant-Respondent.

No. 38653.

Missouri Court of Appeals,
St. Louis District,
Division One.

July 25, 1978.

Motion for Rehearing and/or Transfer
Denied Sept. 15, 1978.

Application to Transfer Denied
Nov. 6, 1978.

Elmer C. Oberhellmann, St. Louis, for plaintiff-appellant.

Sommers & Holloran, Inc., Don B. Sommers, St. Louis, for defendant-respondent.

SMITH, Judge.

Plaintiff appeals from the action of the trial court granting defendant's motion for summary judgment. We outline the factu-

al circumstances under which the case reaches us.

Plaintiff was injured in an automobile accident while riding in a vehicle operated by defendant. The accident occurred in the State of Texas in April 1974. In September 1974, the parties were married in Texas. Thereafter the parties moved to Missouri and in January 1976, this suit was filed seeking damages for the injuries sustained by plaintiff as a result of defendant's negligence. For purposes of the summary judgment and this appeal, the move to Missouri was a valid change of domicile and was not made for the purpose of bringing this suit.

Under Texas law a spouse may not bring an action against the other spouse for damages resulting from a premarital negligent tort. *Latiolais v. Latiolais,* 361 S.W.2d 252 (Tex.Civ.App.1962). Under Missouri law such suit is allowed. *Hamilton v. Fulkerson,* 285 S.W.2d 642 (Mo.1955). The question before us—which law applies?

Since *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo.banc 1969), Missouri has been committed to resolving a conflict of laws in tort cases by using the analysis found in Sec. 145 Restatement (Second) Conflict of Laws. This analysis abandons the previously utilized lex loci delicti (place of the tort) doctrine in favor of the more flexible principal contacts approach. As stated in Sec. 145(1):

> "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, *with respect to that issue,* has the most significant relationship to the occurrence and the parties under the principles stated in § 6." (Emphasis supplied).

The issue here to be decided is intraspousal immunity as to a premarital tort. In *Latiolais, supra,* the Texas court placed its granting of immunity in that situation upon the public policy of protecting and maintaining inviolable the marital relationship by preventing suits between the spouses. The court did not place the immunity upon other grounds, such as the potential of fraud, which might reach beyond the marital relationship. From the standpoint of the Texas law it is apparent that it is the effect upon the marriage that creates the

immunity. We must conclude that this relationship is of concern to Texas only so long as the marriage has some continuing nexus with that State. Once that nexus has terminated it can be of little other than academic concern to Texas what happens to the marriage. It should also be noted that in *Latiolais, supra,* the court stated that the cause of action for premarital tort was not necessarily cancelled by the marriage but simply that the right to sue was abated or suspended by the marriage, that is, the marriage affects only the capacity to sue.

In Missouri intraspousal immunity exists as to torts occurring during the marriage. This immunity was originally based upon the concept that the spouses are a single unit and a tort committed by one against another does not create a cause of action. It is the equivalent in law of negligently injuring oneself. That may still be the basis for such immunity. It may rest on some other basis. *See Ebel v. Ferguson,* 478 S.W.2d 334 (Mo.banc 1972); *Klein v. Abramson,* 513 S.W.2d 714 (Mo.App.1974). The same doctrine obviously does not apply to premarital torts. The tort creates a cause of action; the marriage can affect only the capacity to sue.

Missouri has held that permitting suits for premarital torts does not conflict with the marital relationship. *See Hamilton v. Fulkerson, supra.* Such suits are therefore permitted in Missouri. It appears to us that the application of the standards of Sec. 145 compel a conclusion that the state with the most significant contacts on the issue of a spouse's capacity to sue is the state of the marital domicile at the time of suit, providing such domicile is in fact legitimate and not acquired simply for the purpose of suit. It is, after all, the domiciliary state which has the greatest concern with the marital relationships of its citizens. *See* Sec. 169, Restatement (Second) Conflict of Laws. In this instance Missouri's law on capacity to sue should be applied.

We disagree with defendant's contention that the capacity to sue must be judged at the time of the occurrence, not at the time of suit. Initially we would point out that at the time of the occurrence of the tort no

incapacity existed under the law of either state. Secondly, the capacity question in both Missouri and Texas is determined on the basis of the effect upon the marital relationship, and obviously the effect on the marriage occurs when the suit is filed, not on the date of marriage. See *Washington v. Washington*, 486 S.W.2d 668 (Mo.App. 1972). Thirdly, Sec. 169 of Restatement (Second) dealing with Intra-family Immunity specifically states: "The applicable law will usually be the local law of the state of the parties' domicil."

Nor do we believe this case can or should be decided by resort to definitions of "procedural" and "substantive" law. To a very real degree the "significant contacts" approach is designed to avoid this maze by placing the emphasis upon the importance to each state of the issue involved rather than upon the definition of the issue in procedure vs. substance terms.

We now reach the question which presents the greatest difficulty. Defendant contends that under the provisions of Sec. 145, the court must make its determination under the principles of Sec. 6 of the Restatement (Second). This is correct. See *Griggs v. Riley*, 489 S.W.2d 469 (Mo.App. 1972). The first paragraph of Sec. 6 is as follows: "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law."

This obviously means that if a statute mandates the use of a certain law the court must apply that law without regard to the "significant contact" directives of the remainder of Sec. 6, Sec. 145 and Sec. 169. Defendant then points to Sec. 507.020 RSMo 1969 as a statutory directive applicable here.[1] *See also* Rule 52.03. There are

two potential ways of interpreting this statute. The first interpretation, urged by defendant, is that this section incorporated into the law of Missouri by statute the doctrine of lex loci delicti, at least insofar as capacity to sue is concerned. The other interpretation is that, as a matter of comity, Missouri has by this statute expanded the availability of its courts to those persons who lack capacity to sue in Missouri but have such capacity in other states. *Newlin v. St. Louis & S.F.R. Co.*, 222 Mo. 375, 121 S.W. 125 (1909) and *State v. Mayfield*, 362 Mo. 101, 240 S.W.2d 106 (Mo.banc 1951), overruled in *State ex rel. Chicago, R.I. & P.R. Co. v. Riederer*, 454 S.W.2d 36 (Mo.banc 1970), addressed the statute as essentially an exercise in comity. *See also Elliott v. Johnston*, 365 Mo. 881, 292 S.W.2d 589 (1956). Other cases have, however, treated the statute as a codification of the lex loci delicti doctrine, and held that if no cause of action exists or plaintiff lacks capacity to bring that cause of action in the state of the occurrence of the tort, the action may not be brought in Missouri. *See Osagera v. Schaff*, 293 Mo. 333, 240 S.W. 124 (1922); *Burg v. Knox*, 334 Mo. 329, 67 S.W.2d 96 (1933); *Robinson v. Gaines*, 331 S.W.2d 653 (Mo.1960). All of these cases must be viewed from the standpoint that at the time they were decided lex loci delicti was the judicially approved common law conflicts rule. We find little critical analysis of the scope of the statute in the pre-*Kennedy v. Dixon* era probably because none was necessary. Nor, does *Kennedy* discuss the statute. We conclude, however, that the Supreme Court in *Kennedy* must have treated the statute as simply an expansion of jurisdiction, through comity, of Missouri courts to persons lacking capacity

---

1. 507.020. Action on claim under foreign law
   1. Whenever a claim exists under the law of another state, action thereon may be brought in this state by
   (1) The person or persons entitled to the proceeds of such claim if he or they are authorized to bring such action by the laws of said other state;
   (2) The executor, administrator, guardian, guardian ad litem or other person empowered by the laws of said other state to sue in a representative capacity if the person or persons entitled to the proceeds of such claim are not

authorized to sue in such cases under the law of said other state.
   2. In the cases mentioned in subdivision (2) above, the proceeds of the action, resulting either from judgment or settlement, shall be paid to the person bringing such suit and such person is authorized to satisfy the judgment and execute release. Such person to whom the proceeds are paid shall have authority to distribute and pay same to the person or persons entitled thereto, according to their respective interests therein, under the laws of said other state. (L.1943, p. 353 § 14)

to sue in Missouri but having such capacity in other states. If the statute is viewed as restrictive in nature and simply a codification of lex loci delicti, the plaintiff in *Kennedy* would have been precluded from bringing suit by the first paragraph of Sec. 6, Restatement (Second). We, therefore, hold here that Sec. 507.020 does not preclude the utilization of the significant contacts principles of the Restatement (Second). Applying those principles to the facts here, we hold that the trial court erred in granting the summary judgment against plaintiff.[2]

Judgment reversed and cause remanded.

CLEMENS, P. J., and McMILLIAN, J., concur.

2. We deny defendant's motion to dismiss the appeal for the alleged failure of appellant to comply with the Rules.