**Glynda Randel MILLS,**
**Plaintiff-Appellee/Cross-Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation, Defendant-Appellant/Cross-Appellee.**

Nos. 85–1262, 85–1280.

United States Court of Appeals,
Tenth Circuit.

Aug. 28, 1987.

*United States v. Hansen,* 652 F.2d 1374, 1381–84 (10th Cir.1981).

Glen Mullins of Abel, Musser, Sokolosky & Clark, Oklahoma City, Okl., for plaintiff-appellant.

Brian M. Dell of Speck & Dell, Oklahoma City, Okl., for defendant-appellee.

Before HOLLOWAY, Chief Judge, and SEYMOUR and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Glynda Randel Mills brought this diversity suit in Oklahoma against her former husband, Jack L. Randel, and Randel's insurer, State Farm Mutual Automobile Insurance Company, to recover damages for injuries she sustained in an automobile accident in which Randel was the driver. The case was tried before a jury, which returned a verdict of $125,000 in favor of Mills and against State Farm.[1] The trial court reduced the award by $44,734.68, an amount that State Farm had already paid to Mills pursuant to the personal injury protection (PIP) provisions of Randel's policy.

On appeal, Mills contends that the trial court erred in reducing the verdict by the amount of PIP benefits paid by State Farm. State Farm cross-appeals, contending that the trial court erred by applying Oklahoma law, under which there is no doctrine of interspousal immunity. We reject both contentions and affirm the trial court judgment.

## I.

We first address State Farm's contention that the trial court should not have applied Oklahoma law in determining whether Jack Randel could be sued by his former wife for a negligent tort. The facts relevant to this question are as follows. Glynda Mills met Randel in 1977 in Kansas, where they were both living and working at the time. In 1981, Mills moved to Colorado. In July 1982, she moved to Austin, Texas for a new job. Later in 1982, Mills and Randel decided to marry. Their wedding took place on December 19, 1982, in Stillwater, Oklahoma. At the time of their marriage, Mills was still living in Austin, and Randel was living in Kansas. Immediately after the wedding, the couple moved together to Mill's apartment in Austin. Mills re-

---

1. Mills originally sought to recover under both the liability and uninsured motorist provisions of Randel's policy with State Farm. The liability portion of the policy contained a family household exclusion, however, thus making Randel an uninsured motorist with regard to his liability to Mills. On the other hand, the policy did protect Mills, as Randel's spouse, from injuries caused by uninsured motorists. Mills therefore dismissed her claim against Randel and proceeded against State Farm solely under the uninsured motorist portion of the policy.

turned to her job, and Randel began to look for a new job in Austin.

The accident that forms the basis of this suit occurred on December 26, 1982, near Plainview, Texas. Following the accident, the couple continued to live in Austin, but Mills was unable to work because of her injuries. On approximately January 31, 1983, Mills and Randel moved together to Kansas, where Randel looked for work. In April 1983, they moved to Oklahoma City, where Randel continued to look for work and Mills received medical treatment.

Mills and Randel separated in April or May 1983, and Mills moved to Stillwater. On November 15, 1983, the couple obtained a divorce in Oklahoma City. When the complaint was filed in June 1984, Mills was still living in Oklahoma, and Randel had returned to Kansas.

State Farm moved for summary judgment, arguing that the court should apply the interspousal immunity laws of either Kansas or Texas.[2] A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Because this case arose in the Western District of Oklahoma, Oklahoma conflicts rules determine which state's law controls the interspousal immunity question.

█ In response to State Farm's summary judgment motion, the district court properly determined the immunity conflicts question by applying Oklahoma's "most significant relationship" choice-of-law test, *see White v. White*, 618 P.2d 921, 924 (Okl. 1980); *Brickner v. Gooden*, 525 P.2d 632, 637 (Okl.1974), and decided that "Oklahoma has more significant contacts with the marital relationship than Texas or Kansas." Rec., vol. I, at 81. Accordingly, the court applied Oklahoma law, which does not bar

interspousal suits. We agree with the trial court's resolution of this issue.

Oklahoma has adopted the choice-of-law rules of the Restatement (Second) of Conflict of Laws (1969) (Restatement). *See White*, 618 P.2d at 924; *Brickner*, 525 P.2d at 634–35, 637; *see also Robert A. Wachsler, Inc. v. Florafax Int'l, Inc.*, 778 F.2d 547, 549–50 (10th Cir.1985); *Feldman v. Pioneer Petroleum, Inc.*, 606 F. Supp. 916, 921 (W.D.Okl.1985). The provision of the Restatement central to deciding choice-of-law issues in tort cases is section 145, which provides as follows:

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Restatement § 145.

Under section 145, a court must determine which state has the most significant relationship for each separate legal issue. *See id.* § 145 comment d, at 417. For example, a court could decide that one state's law determines the standard of care in a tort case, while another state's law determines whether a party is immune

---

**2.** At the time of trial, both states clearly barred interspousal suits for negligent torts. *See Guffy v. Guffy*, 230 Kan. 89, 631 P.2d 646, 651 (1981); *Robertson v. Estate of McKnight*, 609 S.W.2d 534, 535–36 (Tex.1980). Subsequent to oral argument of this appeal, Kansas and Texas completely abrogated their interspousal immunity

doctrines. *See Flagg v. Loy*, 241 Kan. 216, 734 P.2d 1183, 1190 (1987); *Price v. Price*, 732 S.W.2d 316 (Tex.1987). Because we conclude that the trial court correctly applied Oklahoma law, we need not determine whether *Flagg* or *Price* should be applied retroactively.

from suit. Section 145 also instructs that the state contacts listed in subsection 2 "are to be evaluated according to their relative importance" to the particular tort issue involved. *Id.* § 145(2). In determining questions of interspousal immunity, courts usually look to factors (c) and (d), *i.e.*, the "domicil ... of the parties" and "the place where the relationship ... between the parties is centered." *Id.* § 145(2)(c), (d). *See, e.g., Edmunds v. Edmunds*, 353 F.Supp. 287, 289 (D.D.C.1972); *Schwartz v. Schwartz*, 103 Ariz. 562, 447 P.2d 254, 257–58 (1968) (en banc), *overruled on other grounds, Fernandez v. Romo*, 132 Ariz. 447, 646 P.2d 878 (1982) (en banc). In addition, section 169 of the Restatement sets out a presumption that the law governing an interspousal immunity question "will usually be the local law of the state of the parties' domicil." Restatement § 169(2).[3]

Sections 145 and 169 are both subject to section 6(2), which lists a number of general factors that must be considered when determining which state has the most significant relationship with regard to a particular issue.[4] In tort cases, the most important of these factors are the policies or purposes of the laws in question and the interests of the states in having their tort rules applied to certain issues. *See* Restatement § 145 comments b, c, at 415–16; *id.* § 6 comments e, f. A comment to section 6 states that "[i]n general, it is fitting that the state whose interests are most deeply affected should have its local law applied." *Id.* § 6 comment f, at 14. The presumption that the law of the parties' domicile will control the interspousal

immunity question comports with this general principle. *Id.* § 6 comment f, at 15.

In interspousal suits in which the marital domicile remains in a single state at all relevant times, courts applying the Restatement have uniformly held that the law of the state of the parties' domicile controls the immunity question. *See, e.g., LeBlanc v. Stuart*, 342 F.Supp. 773, 775 (D.Vt.1972); *Armstrong v. Armstrong*, 441 P.2d 699, 704 (Alaska 1968); *Schwartz*, 447 P.2d at 258; *Robertson*, 609 S.W.2d at 536–37. In our case, however, the marital domicile moved through three different states and never had an extended life in any of those three. Thus, the immunity question cannot be answered by looking simply at the law of the state of the parties' domicile. Instead, the relationship that each state has to the parties' marriage must be evaluated in light of the purposes of each state's laws.

The primary justification for preventing one spouse from suing the other for negligent torts committed during the marriage is to preserve the peace and harmony of the home and marital relationship. *Stevens v. Stevens*, 231 Kan. 726, 647 P.2d 1346, 1348 (1982); *Bounds v. Caudle*, 560 S.W.2d 925, 927 (Tex.1977). The Oklahoma Supreme Court has expressly rejected this justification, however, reasoning that the discord from interspousal suits is attributable not to the court proceedings but to the fact that a tort was committed. *Courtney v. Courtney*, 184 Okla. 395, 87 P.2d 660, 667 (1938). Accordingly, Oklahoma has refused to adopt the interspousal immunity doctrine, thereby implementing its policy of

---

**3.** The complete text of § 169 is as follows:

"(1) The law selected by application of the rule of § 145 determines whether one member of a family is immune from tort liability to another member of the family.

"(2) The applicable law will usually be the local law of the state of the parties' domicil."

**4.** Section 6 provides as follows:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

providing legal redress for all wrongly injured persons. *See id.* at 665.

Although the stated purpose of the interspousal immunity doctrine is to preserve marital harmony, any adverse effect caused by permitting suit does not occur until the suit is filed. *See Huff v. LaSieur,* 571 S.W.2d 654, 656 (Mo.Ct.App.1978). In this case, Mills and Randal had already ended their marriage by the time the action was begun. Preventing Mills from suing her former husband could thus do nothing to preserve the marital relationship. On the other hand, allowing Mills to sue would further the policy of Oklahoma to provide redress for injuries. Moreover, Mills and Randel were married and divorced in Oklahoma, and they spent at least half of their marriage living in Oklahoma.

State Farm argues on appeal that we should disregard any post-accident change of domicile of the parties because allowing a party to obtain a change in law by a change of domicile would encourage forum shopping. Although we do not wish to encourage forum shopping, we refuse for several reasons to hold that the domicile of the parties at the time the tort was committed must determine which immunity law should apply. First, there is no evidence that Mills moved to Oklahoma in order to obtain more favorable law. Second, section 6 requires us to consider the purposes and policies behind the competing laws. In this case, the state where the parties briefly lived at the time of the accident has no interest in implementing its domestic relations policies when, at the time of the suit, the parties no longer lived in the state and the relationship had ended. *See Huff,* 571 S.W.2d at 655; *accord Miller v. Miller,* 22 N.Y.2d 12, 290 N.Y.S.2d 734, 741, 237 N.E.2d 877, 882 (1968). The state where the parties lived at the time of the tort is not the state with the most significant relationship to the marital relationship.[5]

Under the circumstances of this case and in light of the purposes and policies referred to above, the district court correctly concluded that Oklahoma has a more significant relationship to the marriage of Mills and Randel for immunity purposes than does either Texas or Kansas. Accordingly, we affirm its decision to apply Oklahoma law to the interspousal immunity question.

## II.

■ Prior to trial, the parties stipulated that State Farm had made advance payments to Mills under the PIP provisions of Randel's policy and that any judgment Mills received from State Farm should be reduced by the amount of these payments. The court informed the jury of this stipulation and instructed the jury that it should assess the total amount of damages to Mills and that the court would then reduce the award by the amount of the advance payments. Pursuant to the parties' stipulation, the trial judge reduced the jury award by $44,734.68.

Mills argues on appeal that Kan. Stat. Ann. § 40–3113a (1981) does not permit State Farm or the court to deduct previously paid benefits from an uninsured motorist award. We need not reach the merits of this argument, however, because we agree with the trial court that Mills is bound by her pretrial stipulation. In this circuit, the "rulings of a trial court in accordance with stipulations that are clear and unambiguous will not be considered erroneous on appeal." *Lyles v. American Hoist & Derrick Co.,* 614 F.2d 691, 694 (10th Cir.1980). Mills' pretrial stipulation is clear and unambiguous. The stipulation "is neither improvident nor would it work a manifest injustice." *L.P.S. v. Lamm,* 708 F.2d 537, 540 (10th Cir.1983). Considering that the jury made its award with the knowledge that the award would later be reduced, we believe that granting relief from the stipulation would produce an injustice. We therefore affirm the trial court's reduction of the jury's verdict.

AFFIRMED.

---

5. The Texas Supreme Court itself had previously acknowledged that its immunity doctrine would apply only when the state has significant contacts with and interest in the marriage. *See*

*Robertson,* 609 S.W.2d at 537 (applying New Mexico law to suit between estates of New Mexico husband and wife for tort committed in Texas).

BALDOCK, Circuit Judge, specially concurring:

Because Texas and Kansas have both abrogated the doctrine of interspousal immunity, I concur in the conclusion reached by the majority that interspousal immunity does not bar the suit by Mills. However, I write separately to express my concern with the analysis set forth by both the trial court and the majority which bases the determination of applicable law on events occurring after the alleged tort had been committed.

Both the majority and the trial court rely on the fact that, after the accident, Mills and Randel spent part of their brief marriage in Oklahoma, and were eventually divorced in Oklahoma. In order to be faithful to the policy underlying interspousal immunity, that of minimizing marital disharmony based on the commission of a negligent tort, I would make the determination as to which state has the most significant contacts with the marital relationship based on the facts as they existed at the time the alleged tort occurred. This approach would allow an immediate evaluation and resolution of the issue as to whether suit by the injured spouse would be allowed, thus eliminating the uncertainty and unpredictability inherent in an analysis based upon the later actions of the parties. In my view, this immediate resolution is more consistent with the policy of minimizing disharmony, while it also eliminates the possibilities of forum shopping, collusion, and the creation of a cause of action where one did not previously exist. I thus cannot agree with the majority's conclusion that a subsequent divorce or move by the parties could serve as a mechanism by which interspousal immunity, which was applicable at the time of the occurrence, may be defeated.