**Gregory E. GOLLNICK, Appellant,**

v.

**Karen R. GOLLNICK, a Minor, By her next friend Verna GOLLNICK, and Verna Gollnick, Appellees.**

**John GOLLNICK and Margaret Gollnick, Appellants,**

v.

**Karen R. GOLLNICK, a Minor, By her next friend, Verna GOLLNICK, and Verna Gollnick, Appellees.**

**No. 73A01–8704–CV–96.**

Court of Appeals of Indiana, First District.

Jan. 26, 1988.

Peter G. Tamulonis, Robert J. Wampler, Lynn A. Francis, Kightlinger & Gray, Robert A. Smith, N. Kathleen Wenzel, Lewis, Bowman, St. Clair & Wagner, Indianapolis, for appellants.

Scott D. Pankow, Sipe, Pankow, Han & Associates, Howard S. Young, Jr., Young & Young, Indianapolis, Charles T. Bate, Soshnick, Bate & Harrold, Shelbyville, for appellees.

## OPINION ON PETITION FOR REHEARING

NEAL, Judge.

On October 29, 1987, we published our opinion in this cause. 514 N.E.2d 645. We determined that, although Karen, Gregory, and Verna are California domiciliares, lex loci delicti required the application of Indiana substantive law because the allegedly tortious conduct occurred here. 514 N.E.2d at 648. However, we noted that a different result might have been obtained under the "most significant relationship approach" because California has an interest in governing its family relationships. In reaching our decision we relied in large part on *Hubbard Mfg. Co. v. Greeson*

(1986), Ind.App., 487 N.E.2d 825. Recently, the supreme court granted transfer of *Greeson*, vacated the court of appeals decision, and abrogated the lex loci doctrine. *Hubbard Mfg. Co. v. Greeson* (1987), Ind. 515 N.E.2d 1071. The supreme court adopted a two-step choice-of-law rule. The first step is to consider whether the place of the tort bears little connection to the legal action. If the contact is significant, lex loci delicti will be applied; if not, consideration of other factors is permitted, such as:

(1) the place where the conduct causing the injury occurred;

(2) the residence or place of business of the parties; and

(3) the place where the relationship is centered.

At 1073–74 (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)).

In applying this rule to the instant case, we must first determine whether the site of Karen's injury is a significant contact warranting the application of Indiana substantive law.

In *Emery v. Emery* (1955), 45 Cal.2d 421, 289 P.2d 218, unemancipated minor children and their mother sued their father to recover for injuries suffered in an automobile accident. The parties were California domiciliaries, but the accident occurred in Idaho. Because the accident occurred in Idaho the California Supreme Court held that Idaho law should be applied regarding the negligence issue. 45 Cal.2d at 425, 289 P.2d at 221. However, concerning the issue of parental immunity the court looked to California law, because "[i]t is not ... a question of tort but one of capacity to sue and be sued and as to that question the place of injury is both fortuitous and irrelevant." (Footnote omitted.) 45 Cal.2d at 427, 289 P.2d at 222. To hold otherwise, the court reasoned, would subject the rights and duties attendant to the family relationship to constant change as family members crossed state lines during temporary absences from home. *Accord Armstrong v. Armstrong* (1968), Alaska, 441 P.2d 699, 703 (Alaska law applies despite occurrence of accident in Canada during an

automobile trip because contact was "fortuitous, transitory and insubstantial."); *Wessling v. Paris* (1967), Ky.App., 417 S.W.2d 259 (Kentucky guest statute applies when two residents are involved in an Indiana accident because place of accident was fortuitous and Indiana had no interest to be promoted); *but cf. Foster v. Leggett* (1972), Ky.App., 484 S.W.2d 827 (If Kentucky has significant contacts, not necessarily the most significant contacts, Kentucky law will be applied).

A result similar to that of *Emery, supra,* was reached in *Wartell v. Formusa* (1966), 34 Ill.2d 57, 213 N.E.2d 544. In *Wartell* a husband and wife, both Illinois domiciliaries, were injured in an automobile accident during a Florida vacation. The husband died and the wife sued the executor of his estate. The court, treating the issue as one of family law, held that, although Florida law applied to determine whether or not a tort was committed, "Illinois has the predominant interest in the preservation of the husband-wife relationship of its citizens, and to apply the laws of Florida to the question of whether interspousal tort suits may be permitted between Illinois residents would be illogical and without a sound basis." *Id.* at 59, 213 N.E.2d at 545–46. The court cited *Emery, supra,* in support of its decision.

*Wartell* was relied upon in *Aurora Nat'l Bank v. Anderson* (1971), 132 Ill.App.2d 217, 268 N.E.2d 552. In *Anderson* a minor child was a passenger in a car driven by her mother, which was involved in an accident with another car. The accident occurred in Iowa, but all the parties were Illinois residents. The bank, as guardian of the child, sued both her mother and the other driver. The court, citing *Wartell, supra,* characterized the question of capacity to sue in a parent-child suit as a question of family law, and held that Illinois had the predominant interest in the parent-child relationship, so redress otherwise available should not be denied merely because the injury occurred outside Illinois. *Id.* at 220, 268 N.E.2d at 554. The court also noted that the same conclusion would be reached if the issue was considered as a tort question, because Illinois had a more significant relationship with the occurrence and the parties. *Id.* at 221, 268 N.E.2d at 555; *accord Williams v. Williams* (1976), Del., 369 A.2d 669; *Huff v. LaSieur* (1978), Mo.App., 571 S.W.2d 654; *Robertson v. McKnight* (1980), Tex., 609 S.W.2d 534.

█   Under the two-step rule set forth in *Greeson, supra,* if the place of the tort bears little connection to the legal action, other factors may be considered. Regarding intra-family immunity, the applicable law will usually be the law of the state of the parties' domicile. Restatement (Second) of Conflict of Laws § 169(2) (1971). Because Gregory, Karen, and Verna are California residents, California has a predominant interest in their relationship that overrides the fact that the accident occurred within Indiana.

█   However, although the analysis of the choice-of-law issue has been affected by the supreme court's decision in *Greeson, supra,* our decision regarding Gregory has not. California abolished parental immunity in *Gibson v. Gibson* (1971), 3 Cal.3d 914, 479 P.2d 648, 92 Cal.Rptr. 288. Therefore, Karen may maintain a negligence action against Gregory, and his motion for summary judgment was properly denied.

The portion of our original opinion concerning the Gollnicks has not been altered by *Greeson, supra.* Accordingly, summary judgment in favor of them remains appropriate.

Again, we affirm the trial court's ruling on Gregory's summary judgment motion, but reverse its ruling as to the Gollnicks.

Judgment affirmed in part and reversed in part.

RATLIFF, C.J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

For the reasons set forth in my dissenting opinion upon the merits (October 29, 1987) I dissent from the majority's decision to deny Gregory Gollnick's Petition for Rehearing.

Furthermore, I do not agree with the majority's interpretation of the effect to be given *Hubbard Manufacturing Co., Inc. v. Greeson* (1987), Ind., 515 N.E.2d 1071. In *Greeson,* the place of the tort was virtually irrelevant to the lawsuit. The lawsuit there involved an act of negligence or acts giving rise to products liability which took place solely in another state and the parties all had contacts solely with that other state. The only contact with the "place of the tort" was the injury itself.

In the case before us, all relevant incidents and acts took place in Indiana, including the injury. The only significant contact with California is that the parties reside there. The place of the tort is not only significant but is the dominant factor with respect to this litigation. The second step of the Greeson test, therefore, is not applicable in this case.

The Petition for Rehearing filed by Karen and Verna as to the Gollnicks, alleges a misstatement of record in the majority opinion of October 29, 1987. In that opinion it was stated that on the night preceding the accident, "[t]he adults present stationed themselves as lookouts at the bottom of the driveway." (Slip opinion at 2). In the context of the majority opinion concerning the Gollnicks' duty, the statement implied that Gregory had been present the night before and was aware of the risky circumstances involving the sledding site. Accordingly, the opinion implied that in light of Gregory's knowledge the Gollnicks assumed no independent duty toward Karen. *See Campbell v. Northern Signal Co.* (1981), 103 Ill.App.3d 154, 58 Ill.Dec. 638, 430 N.E.2d 670; *Kay v. Ludwick* (1967), 87 Ill.App.2d 114, 230 N.E.2d 494; *Freeze v. Congleton* (1970), 276 N.C. 178, 171 S.E.2d 424, as cited and relied upon in majority opinion (514 N.E.2d at 650).

An examination of the record prompted by Karen and Verna's Petition for Rehearing discloses that Gregory was not present at the sledding site on the night preceding the accident. Such fact might well be de-

termined to have an effect upon the conduct required of the Gollnicks in order to measure up to their duty of reasonable care *under the circumstances.*

The circumstances, as I now know them to be, compel me to retract my earlier conclusion that the Gollnicks' Motion for Summary Judgment should have been granted. Under the facts as now known, I am unable to agree that "as a matter of law, no breach of Gollnicks' duty to exercise reasonable care occurred ..." (Sullivan, J., concurring in part and dissenting in part, 514 N.E.2d at 652).[1]

For the foregoing reasons I would grant both Petitions for Rehearing and would remand for further proceedings.

---

1. My conclusion that, as a matter of law, Gollnicks incurred no premises liability remains un-

changed.