CONSOLIDATED RAIL
CORPORATION,
Plaintiff,

v.

ALLIED CORPORATION, et
al., Defendants.

No. S86–489.

United States District Court,
N.D. Indiana,
South Bend Division.

June 9, 1988.

Harold Abrahamson, Michael C. Adley, Hammond, Ind., for plaintiff.

Brian J. Wanca, Raymond Cusack, Thomas Andrews, Cornelius J. Harrington, Chicago, Ill., for Allied Corp.

James K. Whitaker, Hammond, Ind., for Burlington Northern R.R. Co.

Joseph Stalmack, Joseph Wleklinski, Frank J. Galvin, Hammond, Ind., for Gen. Elec. Railcar Services Corp.

MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on separate summary judgment motions filed by

defendants Allied Corporation, Burlington Northern Railroad Co. ("Burlington"), and General Electric Railcar Services Corp. ("GERSCO"). Fed.R.Civ.P. 56. The plaintiff, Consolidated Rail Corporation ("Conrail"), has filed a response and the defendants their replies. 28 U.S.C. § 1332 provides jurisdiction over the subject matter of this action.

## I. *Introduction*

On February 4, 1985, anhydrous hydrogen fluoride leaked from a railroad tank car located on Conrail's property in Elkhart, Indiana. The leak caused an evacuation of 1,500 people from an area with a population of 5,000 to 6,000 people. More than one hundred people were treated at Elkhart General Hospital for exposure to the gas that leaked from the tank car. Conrail effected voluntary settlements with over one hundred persons and businesses in the Elkhart area for alleged personal injuries, property damage and business losses resulting from the chemical spill. Conrail paid these claims directly to the third parties in the approximate sum of $125,000.00.

In its complaint filed in this court, Conrail alleges that:

(1) GERSCO, whose responsibility it was to maintain and manage the car, improperly maintained the car in question;

(2) Allied failed to fully unload the car, negligently labeled the car as empty and failed to seal the car properly for shipment; and

(3) Burlington negligently failed to inspect the car properly at its Cicero yard.

Conrail also contends that Burlington is liable for damages under a 1981 indemnity agreement between the two railroads.

The parties have stipulated for purposes of this litigation that Conrail seeks to recover only those damages resulting from claims made by third persons or businesses against Conrail for alleged personal injuries, property damage or business losses allegedly resulting from the acid spill incident in Conrail's Robert Young Yards in Elkhart, Indiana on February 3, 1985.

## II. *Factual Background*

Conrail contends that, on January 14, 1985, Tank Car NATX 9408 was shipped from an Allied chemical plant in Canada to another Allied plant in Metropolis, Illinois. GERSCO maintained and managed the car, which was leased to Allied. At the time the car was shipped to Metropolis, it contained approximately 160,550 pounds of anhydrous hydrogen fluoride, a highly toxic chemical. Conrail contends that the car was unloaded at Metropolis by two Allied yard unloading operators, one of whom experienced difficulties in unloading the car. After several attempts, the Allied relief operator notified his foreman that he believed that the car still contained anhydrous hydrogen fluoride. After additional attempts to unload the car, it was released for shipment to Burlington's yard in Cicero, Illinois. Allied employees prepared a waybill for shipment of the car and sent the bill to Burlington, designating the car as an "empty".

Conrail contends that the tank car then was transported to the Burlington yard in Cicero on Burlington trains. On February 3, 1985, Burlington called a Conrail crew and instructed it to transport train BNEL3Y from Cicero to Elkhart. Conrail contends that at the Burlington railroad yard, the Conrail crew was under the direction and control of the Burlington supervisory personnel. During a switching movement at the Cicero yard, a Conrail crew member noticed that the tank car appeared to be leaking. The Burlington yard master was notified of the leak and instructed a Burlington car foreman to inspect the car. The car foreman advised the Burlington yard master that the car had been inspected and was not found to be leaking. Afterwards, the Burlington yard master informed the Conrail crew that the train was clear for departure.

After the train arrived at Elkhart, the Conrail conductor noticed that the tank car was still leaking. A portion of the City of Elkhart was evacuated as a result of the leak. Subsequently, the tank car in question was inspected and found to have a fracture that resulted in the chemical leak.

As a result of the leak, Conrail paid damages to third parties in the sum of $125,-000.00.

### III. Standard of Review of Summary Judgment Motions

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Wilson v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 841 F.2d 1347 (7th Cir.1988); *Munson v. Friske*, 754 F.2d 683 (7th Cir.1985). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donald v. Polk County*, 836 F.2d 376 (7th Cir. 1988). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Anderson v. University of Wisconsin*, 841 F.2d 737 (7th Cir.1988).

When the parties do not dispute the factual basis of a motion for summary judgment, the reviewing court's only inquiry is whether judgment should issue as a matter of law. The burden of proof on this matter rests with the moving party. Summary judgment is inappropriate, however, if the parties disagree about inferences reasonably to be drawn from undisputed facts. *Bowyer v. United States Dept. of Air Force*, 804 F.2d 428 (7th Cir.1986).

When the parties dispute the facts, the parties must produce proper documentary evidence to support their contentions. The parties cannot rest on mere allegations in the pleadings, *Boruski v. United States*, 803 F.2d 1421 (7th Cir.1986), or upon conclusory allegations in affidavits. *First*

*Commodity Traders v. Heinold Commodities*, 766 F.2d 1007 (7th Cir.1985). The court must draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electronics Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Vachet v. Central Newspapers, Inc.*, 816 F.2d 313 (7th Cir.1987), as long as the inferences are reasonable. *Davis v. City of Chicago*, 841 F.2d 186 (7th Cir. 1988). A party need not try its case by affidavit, but it must set forth some facts from which the court can reasonably infer that the party would be able to produce some evidence at trial to support its theory. *Matter of Morris Paint and Varnish Co.*, 773 F.2d 130 (7th Cir.1985). The non-moving party must show that the disputed fact is material, that is, outcome-determinative under the applicable law. *Wainwright Bank & Trust Co. v. Railroadmens Federal Savings & Loan Ass'n*, 806 F.2d 146 (7th Cir.1986).

The defendants' summary judgment motion must be addressed with these standards in mind.

### IV. Analysis

Conrail seeks contribution based upon a common law theory of negligence from the defendants as joint tortfeasors.[1] The defendants argue that Indiana law forecloses such recovery: under Indiana law, a joint tortfeasor is not entitled to contribution from other joint tortfeasors. *Elcona Homes Corporation v. McMillan Bloedell, Ltd.*, 475 N.E.2d 713 (Ind.App.1985); *Gomez v. Adams*, 462 N.E.2d 212 (Ind.App. 1984); *Barker v. Cole*, 396 N.E.2d 964 (Ind. App.1979); *Jackson v. Record, et al.*, 211 Ind. 141, 5 N.E.2d 897 (1937). Conrail asserts that Illinois law governs its claim. Under Illinois law, contribution can be obtained from a joint tortfeasor by virtue of Illinois Revised Statutes, Chap. 70, Par. 302(a).[2]

---

**1.** Conrail also seeks contribution from Burlington based on a letter agreement entered into on April 22, 1981. This issue will be addressed separately from the common law negligence theory.

**2.** § 2. Right of Contribution.

(a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even

## A. Choice of Law

A United States District Court hearing a civil action in tort and having jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 must apply the substantive law of the state in which it sits. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The district court must apply the choice of law principles of the state in which the court is sitting. *Klaxon Company v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The leading Indiana case governing choice of laws decisions in tort actions is *Hubbard Manufacturing Co. v. Greeson*, 515 N.E.2d 1071 (Ind.1987). In *Hubbard Mfg. Co.*, the Indiana Supreme Court abrogated the *lex loci* doctrine and fashioned a two-step choice of law rule in its place. In *Gollnick v. Gollnick by Gollnick*, 517 N.E.2d 1257, 1258 (1988), the Indiana Court of Appeals summarized the method adopted in *Hubbard Mfg. Co.*:

> The first step is to consider whether the place of the tort bears little connection to the legal action. If the contact is significant, lex loci dilecti will be applied; if not, consideration of other factors is permitted, such as:
>> (1) the place where the conduct causing the injury occurred;
>> (2) the residence or place of business of the parties; and
>> (3) the place where the relationship centered.

*Gollnick*, 517 N.E.2d at 1258. This court, sitting in diversity, must employ this analysis.

The court first must consider whether the place of the tort "bears little connection" to this action. Conrail argues that the conduct causing the injury as alleged in the complaint all occurred in Illinois: Burlington failed to inspect the train properly in Cicero; Allied unloaded the car improperly at Metropolis; GERSCO maintained the tank car improperly, and that improper maintenance could have occurred in any state other than Indiana.

though judgment has not been entered against

Conrail asserts that the leak's eventual detection in Elkhart, Indiana was merely fortuitous. In support of this proposition, Conrail submitted Jon Gabiou's deposition testimony that a videotape of the tank car shows it was leaking when it left the Cicero yard, evidenced by a small plume on one end of the car. Because the alleged negligence occurred in Illinois, Conrail argues, the law of Illinois, which has the most significant interest in the litigation, should apply. Under Illinois law, Conrail would have a right to seek contribution from the defendants for settlement payments made to third parties.

Conrail presents strong arguments that Illinois has significant contacts with the tort involved in this case. Under a pure "most significant contacts" analysis, its arguments might be persuasive. Under the *Hubbard Mfg. Co.* analysis, however, the court must first examine the contacts between the legal action and the place where the wrong was committed. The threshold inquiry is not whether the contacts with the place where the wrong was committed are significant in comparison with other places; instead, the court must simply decide whether "the place of the tort bears little connection to the legal action ..." *Hubbard Mfg. Co.*, 515 N.E.2d at 1073.

The *Hubbard Mfg. Co.* court offered no definition of "little connection". Its failure to do so should cause little concern in a common law system; subsequent cases will lead to sufficient definition. Two Indiana cases have addressed the issue: *Hubbard Mfg. Co.* itself and *Gollnick v. Gollnick by Gollnick*, 517 N.E.2d 1257 (Ind.App.1988).

*Hubbard Mfg. Co.* was a wrongful death action brought on behalf of an Indiana citizen against the Indiana manufacturer of an allegedly defective lift unit the plaintiff's decedent was using at the time of his death in Illinois. The court analyzed the contacts with Illinois:

> The last event necessary to make Hubbard liable for the alleged tort took place in Illinois. The decedent was working in Illinois at the time of his death and the vehicle involved in the fatal injuries was

any or all of them.

in Illinois. The coroner's inquest was held in Illinois, and the decedent's wife and son are receiving benefits under the Illinois Workmen's Compensation Laws. None of these facts relate to the wrongful death action filed against Hubbard. The place of the tort is insignificant to this suit.

515 N.E.2d at 1074. The court then turned to the second step of its analysis: comparison of the other factors set forth in Restatement (2d) Conflicts of Laws § 145(2). The plaintiff was an Indiana resident and the defendant was an Indiana corporation with its principal place of business in Indiana. The lift in question was manufactured in Indiana,[3] and the plaintiff's decedent had visited the defendant's Indiana plant frequently to discuss the lift's repair and maintenance. The court concluded that Indiana law should apply.

*Gollnick v. Gollnick by Gollnick*, 517 N.E.2d 1257, involved a suit between California residents. The defendant was an essentially non-custodial father[4] who took his children from California to Indiana to visit relatives. While in Indiana, one of the children was struck by a car while sledding. The injured child's mother sued the father in Indiana on behalf of the injured child. Before *Hubbard Mfg. Co.*, the Indiana Court of Appeals held that the law of Indiana, the place of the tort, governed the action. *Gollnick v. Gollnick by Gollnick*, 514 N.E.2d 645, 648 (Ind.App.1987). On rehearing after *Hubbard Mfg. Co.*, the court held:

> Under the two-step rule set forth in *Greeson, supra,* if the place of the tort bears little connection to the legal action, other factors may be considered. Regarding intra-family immunity the applicable law will usually be the law of the state of the parties' domicile.... Because [both parents and the injured child] are California residents, California has a predominant interest in their relationship

that overrides the fact that the accident occurred within Indiana.

517 N.E.2d at 1259. Judge Sullivan dissented; because all relevant acts occurred in Indiana, he believed that the place of the tort was "not only significant but [was] the dominant factor with respect to this litigation". 517 N.E.2d at 1260. Judge Sullivan's dissent underscores the difficulty of the *Hubbard Mfg. Co.* test.

Despite the test's difficulty, however, the court cannot find that a tort resulting in medical treatment for scores of Indiana citizens, evacuation of more than a thousand Indiana citizens, and damages of $125,000.00 to Indiana citizens "bears little connection" to Indiana. Conrail's argument is based on a crabbed view of the litigation. Conrail focuses exclusively on the conduct of the parties from whom it seeks contribution, and notes that all their conduct occurred outside Indiana. Nonetheless, very significant events occurred within Indiana, including the injuries and losses for which Conrail paid. Moreover, if Conrail is deemed to have been a joint tortfeasor, as all of the parties seem to agree, its conduct appears to have occurred wholly within Indiana.

Indiana law would govern the underlying claims by Elkhart residents against Conrail; it certainly cannot be said that Indiana "bears little connection" to those claims. That Indiana law would govern the underlying claims is not necessarily dispositive of the choice of laws issue between joint tortfeasors, but is of significant weight. See Restatement (2d) Conflicts of Laws § 173; *Shields v. Consolidated Rail Corp.*, 810 F.2d 397 (3rd Cir.1987).

A brief hypothetical underscores the unwarranted narrowness of Conrail's view. Under Indiana law, a "plaintiff has the option of proceeding against only one of the joint tortfeasors, or after obtaining judgment against all, to levy execution

---

**3.** The opinion of the Indiana Court of Appeals reports that the lift was licensed and housed in Illinois at the time of the decedent's accident, *Hubbard Mfg. Co. v. Greeson,* 487 N.E.2d 825, 826 (Ind.App.1986), a fact not mentioned by the supreme court.

**4.** The parents had been granted joint legal custody, but physical custody had been vested in the mother. The facts of the case are taken from the Court of Appeals' original decision, *Gollnick v. Gollnick by Gollnick,* 514 N.E.2d 645, 647 (Ind.App.1987).

against only one of several joint tortfeasors." *Barker v. Cole,* 396 N.E.2d 964, 971 (Ind.App.1979). Assuming that the parties to this action are joint tortfeasors (as they must be under Conrail's common law claim to contribution under Illinois law), an injured Elkhart resident could have sought and obtained recovery, for example, solely from Allied. Had Allied then sought contribution from Conrail, which acted solely within Indiana, no party rationally could have proposed that Indiana had little connection to the legal action. Choice of law should be governed neither by a plaintiff's selection of a defendant nor by one potential defendant's decision to settle voluntarily.

Accordingly, the court concludes that Indiana, the place of the tort, has a significant relationship to this legal action. Under Indiana's choice of laws rule enunciated in *Hubbard Mfg. Co.,* no further inquiry is allowed. Indiana law governs the suit, and Indiana law precludes contribution among joint tortfeasors.

### B. The Indemnity Agreement

■ Conrail contends that Burlington is liable under a written agreement dated April 22, 1981. Burlington contends the agreement does not apply in this action. Burlington argues that the tank car was a component part of a Conrail train, powered by Conrail engines and under a Conrail crew's direct supervision. Moreover, the acid spill occurred on Conrail tracks or trackage in its yards in Elkhart, Indiana. A leaking tank car that was a component part of a Conrail train situated on Conrail trackage gave rise to the damage claims for which Conrail seeks contribution. The tank car was neither part of a Burlington train nor situated on Burlington trackage when the incident occurred in Elkhart.

The court must determine whether the agreement's recital paragraphs bind Burlington for purposes of indemnification in this action.[5] The court must ascertain the parties' intent in drafting the recital paragraphs preceding the paragraphs allocating liability.

Burlington argues that the agreement applies only when a Burlington train is on Conrail trackage or a Conrail train is on Burlington trackage. Conrail appears to accept this interpretation, but argues that the train was on Burlington trackage and in interchange when the leak was reported in Illinois and Burlington failed to inspect the car properly when it was on Burlington trackage. Conrail also contends that the train was designated as a Burlington train.

Genuine issues of material fact foreclose judgment as a matter of law with respect to the agreement between Burlington and Conrail. The parties agree that the acid spill occurred on Conrail trackage at Conrail's Elkhart, Indiana yards. However, Conrail contends that the acid leak in Elkhart resulted from Burlington's failure to inspect the car properly while it was leaking on Burlington trackage in Cicero, Illinois. According to Conrail, a videotape of the tank car reflects such a leak. The court must draw any permissible inferences from the material before it in favor of the non-moving party, *Matsushita Electronics Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The materials before the court reasonably could support an inference that the leak occurred while a Conrail train was on Burlington trackage.

### C. Implied Indemnity

In its response to Burlington's summary judgment motion, Conrail asserted that

5. The Agreement reads in pertinent part:
   From time to time ... joint use is made of trackage of either one or the other of our companies for interchange and/or other purposes. Appointment of accident expenses under such circumstances can be difficult and burdensome.
   
   \*    \*    \*    \*    \*    \*
   
   In order to forestall controversies concerning each other's trackage interchange and/or other purposes in those cases ..., it is proposed

that the following Agreement be entered into between our companies:

   \*    \*    \*    \*    \*    \*

   It is hereby agreed ... that if either party hereto operates its trains, engines, cars or other rolling stock upon the trackage of the other party hereto for interchange and/or other purposes ... then the provisions of this Agreement shall apply to said operation and use.

even if (as the court has found) Indiana law applies to this action and no contribution can be obtained under Conrail's common law theory of negligence, it still has a right to indemnification from Burlington on the theory of an implied contract of indemnity. *McClish v. Niagara Machine & Tool Works*, 266 F.Supp. 987 (S.D.Ind.1967). Conrail argues that it neither owned, nor had a duty to maintain, the tank car, and that Burlington had the duty to inspect the car properly at the Cicero rail yard.

Burlington argues that Conrail, by its prompt settlement and payment of all claims asserted against it by the injured persons and businesses in Elkhart, tacitly admitted its own negligence and fault and thereby became a tortfeasor.

Both parties cite *McClish v. Niagara Machine & Tool Works*, 266 F.Supp. 987 (S.D.Ind.1967), as authority for their respective arguments. *McClish* leads the court to conclude that Conrail is a joint tortfeasor and has no right to indemnity under the theory of implied indemnity of contract.

> Where the negligent acts of parties concur in producing injury, they are jointly and severally liable not only where there is a breach of a common duty owing by them, but also where their acts of negligence are separate and independent. In either situation they would be joint tortfeasors, in pari delicto, and no right to indemnity exists. But if the negligence of a defendant does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent independent act of a third person, such acts are not concurrent, and the existence of the condition is not the proximate cause of the injury.

*McClish*, 266 F.Supp. at 991.

Generally, Indiana precludes contribution or indemnification between joint tortfeasors absent an express contract for such contribution. *McClish* identified an exception to this rule: one who is constructively liable to a third-person by operation of some special statute or rule of law that imposes upon him a non-delegable duty, but who is otherwise without fault, is enti-

tled to indemnity from one who causes the harm. *McClish*, 266 F.Supp. at 990; *Summar v. Indiana Belt R. Co.*, 515 N.E.2d 130 (Ill.App.1986).

Conrail identifies no statute, rule of law or non-delegable duty that applies in this case. Further, Conrail is not without fault. Conrail has not disputed Burlington's assertion that by settling with the Elkhart residents as a result of the acid spill that occurred on Conrail's property, it essentially admitted negligence. As a joint tortfeasor, Conrail has no right of common law implied indemnity under Indiana law. The defendants are entitled to judgment as a matter of law as to this theory.

### V. *Conclusion*

For the foregoing reasons, defendant Burlington's motion for summary judgment should be, and hereby is, GRANTED IN PART and DENIED IN PART. Burlington is granted judgment on Conrail's common law contribution claim and on Conrail's implied indemnity of contract claim, but is denied judgment on Conrail's claim under the indemnity agreement.

The summary judgment motions of defendants Allied and GERSCO should be, and hereby are, GRANTED.

SO ORDERED.