## SMITH v. SMITH.

[No. 11,744. Filed January 16, 1924. Rehearing denied March 21, 1924. Transfer denied June 25, 1924.]

1. PARENT AND CHILD.—*Tortious Acts of Parent to Child.—Child's Recovery Denied.*—A child cannot maintain an action against its parent for tortious acts of such parent committed during the child's minority and while it is unemancipated and a member of the parent's family; the common law gave no such right of action, and no statute has been enacted conferring such right (*Treschman* v. *Treschman,* 28 Ind. App. 226, criticised and distinguished). p. 568.

2. COMMON-LAW RULES.—*Law of the State.—Exceptions.*—The rules of the common law, having been adopted in this state, are the law of the state and binding on its courts, except as limited by treaties, constitutions and statutes. p. 568.

3. PARENT AND CHILD.—*Tortious Acts of Parent to Child.—Recovery by Child Denied.—Reasons for Rule Unchanged.*—The reasons for the rule against permitting a child, after becoming of age, to recover from his parent for tortious acts committed against him during his minority while a member of the parent's family and unemancipated, continue unchanged. p. 568.

From Boone Circuit Court; *Frank B. Hutchinson,* Judge.

Action by Otis P. Smith against Ambrose E. Smith, his father, for damages for acts of violence inflicted on the former during his minority. From a judgment for defendant on demurrer to the complaint, the plaintiff appeals. *Affirmed.*

*G. R. Estabrook,* for appellant.
*Ira M. Sharp,* for appellee.

BATMAN, J.—This is an action by appellant against appellee, a son against a father, to recover damages alleged to have been sustained by the former, as the result of the wrongful acts of the latter. The complaint is in two paragraphs. The first is based on acts of personal violence, inflicted during appellant's minority, while he was a member of appellee's family, which are alleged to have continued over a period of years, and to have been "cruel, inhuman, excessive, unreasonable, unwarranted and malicious." The second is based upon the failure, neglect and refusal of appellee, without any excuse whatsoever, to send appellant to school, or otherwise provide for his education, during the years of his minority, while a member of the former's family, thereby violating the laws of this state, and unlawfully depriving him of an education, from which he has sustained damages. Each paragraph of the complaint shows that this action was commenced after appellant had reached the age of twenty-one years, and had ceased to be a member of appellee's family, but before he had reached the age of twenty-three. Demurrers for want of sufficient facts were filed to each paragraph of the complaint, which were sustained, and appellant refusing to plead further, judgment was rendered against him. The actions of the court in sustaining said demurrers constitute the only errors properly assigned on appeal.

An examination of the briefs in this case discloses that the determination of a single question will be decisive of this appeal. It may be stated thus: 1-3. May a child maintain an action against its father for damages arising out of tortious acts of such parent, which occur during such child's minority, while it is unemancipated and a member of the parent's family? The common law gives the child no such right of action. The reasons for denying such redress have been summarized in a standard legal treatise as follows: "It is well established that a minor child cannot sue his parents for a tort. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. An unkind and cruel parent may and should be punished at the time of the offense, if an offender at all, by forfeiting custody and suffering criminal penalties, if need be; but for the minor child who continues, it may be for long years, at home and unemancipated, to bring a suit, when arrived at majority, free from parental control and under counter-influences, against his own parent, either for services accruing during infancy or to recover damages for some stale injury, real or imagined, referable to that period, appears quite contrary to good policy. And this rule has been applied not only in cases of excessive punishment, or other assault and battery, but to the most extreme case possible, that of the ravishment of a minor daughter by her father." 20 R. C. L. 631. The following decisions fully support the text quoted: *McKelvey* v. *McKelvey* (1903), 111 Tenn. 388, 77 S. W. 664, 64 L. R. A. 991, 102 Am. St. 787, 1 Ann. Cas. 130; *Roller* v. *Roller* (1905), 37 Wash. 242, 79 Pac. 788, 68 L. R. A.

893, 107 Am. St. 805, 3 Ann. Cas. 1; *Foley* v. *Foley* (1895), 61 Ill. App. 577; *Hewlett* v. *George, Exr.* (1891), 68 Miss. 703, 13 L. R. A. 682; *Small* v. *Morrison* (1923), 185 N. C. 577, 118 S. E. 12, 31 A. L. R. 1135. As said in a note to the second case cited, the absence of a more extended list of decisions would indicate that the rule stated has been so generally recognized that courts have seldom been called upon to give it application.

The rules of the common law, having been adopted in this state, are binding upon its courts, as has often been declared, except as limited by treaties, constitutions and statutes. *Sopher* v. *State* (1907), 169 Ind. 177, 14 L. R. A. (N. S.) 172, 14 Ann. Cas. 27; *Atkinson* v. *Disher* (1912), 177 Ind. 665; *State, ex rel.,* v. *Ellis* (1916), 184 Ind. 307. No limitation on the rule stated from any of these sources is cited, and we assume there is none. Certainly no statute has ever been enacted in this state conferring such a right of action. But if it be contended that the reasons for the rule which denies such right never existed in this state, or at least that they do not now prevail, and hence the rule itself does not exist, by reason of the familiar maxim in that regard, we would be compelled to withhold our concurrence. See *Ketelsen* v. *Stilz* (1916), 184 Ind. 702, L. R. A. 1918D 303, Ann. Cas. 1918A 965, where the court discusses the effect of an absence of the reasons on which the common-law rule is based. The Supreme Court of this state has never declared that the reasons for such rule have never existed in this state, or that they do not now- exist, and we find no grounds upon which to base such a conclusion. From our knowledge of the social life of today, and the tendencies of the unrestrained youth of this generation, there appears to be much reason for the continuance of parental control during the child's minority, and that such control should not be

embarrassed by conferring upon the child a right to civil redress against the parent under the circumstances stated in the question we are now considering.   In our opinion, much reason exists for maintaining the sound public policy, which, as stated, underlies the rule which denies such redress.   Extreme cases may arise where it may seem harsh to deny the right, but we are governed by recognized rules, which must be uniformly applied.   On the whole, it seems far better to rely upon the criminal law, and the equity powers of the court, to protect the child, where parental affection fails, even if they afford no redress for past wrongs, than to abandon the rule under consideration.   At least it impresses us as being a matter for legislative consideration, rather than judicial determination.   For the reasons stated, we conclude that the question under consideration must be answered in the negative.   This conclusion is controlling as to each paragraph of the complaint, and hence we need not consider the special reasons urged by appellee in support of the court's action in sustaining the demurrer to the second paragraph.

Appellant, in an effort to lead the court to a different conclusion has cited the following cases, which we will now consider.   *Hinkle* v. *State* (1891), 127 Ind. 490; *Hornbeck* v. *State* (1896), 16 Ind. App. 484; *People* v. *Green* (1908), 155 Mich. 524, 119 N. W. 1087, 21 L. R. A. (N. S.) 216; *Clasen* v. *Pruhs* (1903), 69 Nebr. 278, 95 N. W. 640, 5 Ann. Cas. 112; *Treschman* v. *Treschman* (1901), 28 Ind. App. 206.   The first three involve criminal actions, and hence are not applicable in an action for damages.   The next is a Nebraska case, in which the question we have before us is not fully considered, but it appears to have been assumed that a parent is liable to his child in damages where he inflicts an excessive injury through malice, and from wicked impulses.   However, we cannot accept it as a

controlling authority. The last case cited is one from this court, but is clearly distinguishable from the instant case, in this, that the one charged with the tortious acts was the stepmother of the minor involved, and no showing appears that she stood *in loco parentis* to such minor, at the time of the infliction of the injury on which the action was based—the mere existence of the relation shown not establishing such fact. True, the opinion in that case contains a discussion which appears to indicate that a minor child, under certain extreme circumstances, might maintain an action against its parent for damages arising from the infliction of personal injuries, but so much of the opinion as appears to so hold is purely *obiter dictum*, as no such question was involved in that action. However, it will be noted that no recognition is given to the right of an adult child, as in the instant case, to maintain an action, for personal injuries inflicted by the parent during its minority, as shown by the following statement, quoted from the opinion: "We are not here concerned with the right of an adult child to sue a parent for a tort committed during infancy. There may be good reasons for denying this right where the minor child, after the injury, continues possibly for many years, at home and unemancipated, and upon arriving at majority seeks to recover damages for such injury. And it may be admitted that there may be good ground for questioning an infant child's right of action against its father, or against the mother as head of the family, but we are not prepared to say that in *no case* should such an action be allowed." The conclusion reached by the court in that case appears to have been based on a process of reasoning, supported by a quotation from a single authority—Reeve, Domestic Relations—in which it is said that, for injuries inflicted under certain conditions, the parent *ought to be* liable for damages. These

conditions are such as would subject the offender to criminal punishment, and on this, the author has merely based an opinion that redress through civil damages should also be allowed, without declaring that such is the law. For the reason stated, the case last above cited cannot be accepted as controlling. We conclude there was no error in the action of the court in sustaining the demurrer to either paragraph of the complaint.

Judgment affirmed.