DOUGLAS FRANKLIN VAUGHAN, A MINOR BY HIS GRANDFATHER AND NEXT FRIEND, RALPH FRANKLIN VAUGHAN *v.* JAMES F. VAUGHAN AND LINDA JOYCE VAUGHAN.

[No. 1-574A81. Filed September 18, 1974.]

*Brent E. Dickson,* of Lafayette, for appellant.

*Aribert L. Young, Stephen L. Brown, John W. Cotner, Kightlinger, Young, Gray & DeTrude,* of counsel, of Indianapolis, for appellees.

ROBERTSON, P.J.—Four year old Douglas Vaughan received head injuries when struck by a falling tombstone while visiting a cemetery with his parents, the defendant-appellees. The plaintiff-appellant, Douglas' grandfather, filed suit alleging that the parents were negligent in supervising Douglas.

The trial court sustained a motion to dismiss by ruling that the parents were immune from suit and that the complaint failed to state a claim upon which relief could be granted.

The overruled motion to correct errors, whose overall purpose is to seek an abrogation of the doctrine of parental immunity in Indiana, presents three issues.[1]

We affirm the trial court's ruling.

---

1. The counsel involved in this appeal have provided the court with concise and well written briefs which contain numerous authorities representing both sides of the basic issue. Because these authorities are not cited in the body of the opinion it should not be construed as a cavalier treatment of the question by the court, nor as a lack of our appreciation of the research undertaken by counsel.

The first of three major assignments of error alleges that the case of *Smith* v. *Smith* (1924), 81 Ind. App. 566, 142 N.E. 128, (the Indiana progenitor of parental immunity) is judicially unsound for the reason it is based upon neither statute nor English common law. We are not persuaded that *Smith, supra,* should be overruled for those reasons. A case, such as *Smith, supra,* loses none of its efficacy simply because of its judicial creation.

Concomitant with the foregoing is the assertion that *Brooks* v. *Robinson* (1972), 259 Ind. 16, 284 N.E.2d 794 (absolute abrogation of interspousal immunity in Indiana) philosophically opens the door to an overturning of *Smith* v. *Smith, supra.*

It would be folly not to recognize that immunity, as an avoidance of liability for tortious conduct, has diminished substantially in this jurisdiction over recent years. In addition to *Brooks, supra,* many of the vestiges of governmental immunity are of no more than historical interest. *See: Campbell* v. *State* (1972), 259 Ind. 55, 284 N.E.2d 733 and authorities cited therein.

*Brooks, supra,* contains two primal reasons for doing away with interspousal immunity.

One was a rejection of the idea that husband and wife litigation, founded on negligence, would serve to spawn "fraud, collusion, and trivial litigation", especially where insurance was involved. *Smith, supra,* was silent about such reasoning in reaching its decision, although foreign cases cited by the parties have relied, pro and con, on the possibility. It would seem, therefore, that *Brooks, supra,* is supportive in this regard, in that one of the reasons for maintaining parental immunity has lost its validity in Indiana.

It does recognize, however, that the question has been widely litigated as well as receiving the attention of numerous scholars. Any substantial discussion on our part of the sub-issues (changing social values, parent-child relationship, etc.) could not significantly add to what already exists, and only serve the cause of redundancy.

The second reason presented in *Brooks, supra,* was another rejection of a long standing idea that tort litigation between husband and wife was disruptive of "peace and harmony of the marriage." It is here that we feel *Brooks, supra,* does not support the effort to terminate parental immunity. Assuming for the moment that nuptial peace and harmony no longer requires judicial enforcement, it is quite another thing to reject much of the patent truth in the seemingly ageless observation of *Smith, supra:*

"From our knowledge of the social life of today, and the tendencies of the unrestrained youth of this generation, there appears to be much reason for the continuance of parental control during the child's minority, and that such control should not be embarrassed by conferring upon the child a right to civil redress against the parent under the circumstances stated in the question we are now considering. In our opinion, much reason exists for maintaining the sound public policy, which as stated, underlies the rule which denies such redress." 81 Ind. App. 569, 570.

The court does continue that under extreme circumstances the immunity may not exist, however, a failure to supervise, as in this case, would not be sufficient, in our opinion to qualify.

We are of the opinion that *Smith* v. *Smith, supra,* remains valid, and binding law.

It is next argued that the doctrine of parental immunity is an unconstitutional denial of equal protection as well as a denial of access to the courts.

The equal protection guarantees of both the state and federal constitutions do not prohibit all classifications. It is only demanded that the classification be reasonable and not arbitrary. *Miller* v. *McDonald* (1973), 260 Ind. 565, 297 N.E.2d 826.

The grant of parental immunity meets this requirement for there are legitimate reasons for granting the immunity. Unity of interest of parent and child, no truly adversary situation, difficulty of dissolving the relationship and prevention of family discord are a

few of these reasons. We cannot, therefore, say the grant of immunity is arbitrary and without rational basis as a matter of law.

It cannot be said that parental immunity violates the child's rights conferred by Art. 1, § 12 of the Indiana Constitution which says:

"All courts shall be open; and every man for injury done to him in his person . . . shall have remedy by due course of law."

In *Brooks* v. *Robinson, supra,* our Supreme Court stated that the abrogation of interspousal immunity would reflect the letter and spirit of the foregoing constitutional article. However, the court did so only after finding: "That the reasoning advanced for retention of the doctrine is judicially unsound . . ." As heretofore indicated we believe the doctrine of parental immunity to be judicially sound.

The final proposition is that the doctrine of parental immunity is judicially unsound. For the most part, the appellants' several arguments involve the various policy arguments in favor of abrogation of parental immunity as evidenced by cases from several foreign jurisdictions. Our previous discussion of the prior two issues is dispositive of the merits of this issue and require no further discussion.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 316 N.E.2d 455.