**Gregory E. GOLLNICK, Appellant**

**v.**

**Karen R. GOLLNICK, a Minor, By her next friend, Verna GOLLNICK, and Verna Gollnick, Appellees.**

**John GOLLNICK and Margaret Gollnick, Appellants,**

**v.**

**Karen R. GOLLNICK, a Minor, By her next friend, Verna GOLLNICK, and Verna Gollnick, Appellees.**

**No. 73A01-8704-CV-96.**

Court of Appeals of Indiana, First District.

Oct. 29, 1987.

---

Peter G. Tamulonis, Robert J. Wampler, Lynn A. Francis, Kightlinger & Gray, Robert A. Smith, N. Kathleen Wenzel, Lewis, Bowman, St. Clair, & Wagner, Indianapolis, for appellants.

Scott D. Pankow, Sipe, Pankow, Han, & Associates, Howard S. Young, Jr., Young & Young, Indianapolis, Charles T. Bate, Soshnick, Bate, & Harrold, Shelbyville, for appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Pursuant to Indiana Rules of Procedure, Appellate Rule 4(B)(6), defendant-appellants, Gregory E. Gollnick (Gregory) and John and Margaret Gollnick (the Gollnicks), bring an interlocutory appeal from the Shelby Circuit Court's denials of their motions for summary judgment. The motions were filed in response to a claim for personal injuries brought by plaintiff-appellees, Karen R. Gollnick (Karen), who is Gregory's daughter and the Gollnicks' niece, and Verna Gollnick (Verna), Karen's mother and Gregory's former spouse.

We affirm in part and reverse in part.

## STATEMENT OF THE FACTS

Gregory and Verna were married in 1967. The marriage produced two children, Amy, born in 1971, and Karen, born in 1974. Pursuant to a written settlement agreement, Verna and Gregory agreed to joint legal custody of their daughters, but Verna was awarded physical custody, subject to Gregory's reasonable visitation.

In December 1983, Gregory, who, like Verna, is a resident of California, exercised his visitation rights and took his daughters to visit their aunt and uncle, the Gollnicks, in Indiana. Gregory and the girls arrived at the Gollnick home on December 26, and that evening Amy, Karen, and their cousins went sledding down the driveway of the vacant house next door. The driveway was curved and sloping, and it emptied into a cul-de-sac. The Gollnicks had cautioned their children to be aware of cars entering the cul-de-sac because embankments at the end of the driveway obscured the views of sledders and oncoming motorists. That night, the adults present stationed themselves as lookouts at the bottom of the driveway.

The morning of the next day, December 27, the children again went sledding. Gregory specifically gave Karen permission to go. No adults were present, and no one was positioned at the bottom of the driveway. As Karen sledded down the driveway, a cousin saw a car approaching. He yelled out a warning, but it was too late for Karen to take evasive action. She struck the car, and suffered a broken leg and a head injury, the latter requiring extensive rehabilitation.

Karen and Verna filed a complaint against Gregory and the Gollnicks, alleging the former negligently supervised Karen and the latter failed to warn Karen of a danger which they knew existed. Both Gregory and the Gollnicks filed motions for summary judgment. Gregory asserted Karen could not maintain an action against him because of the parental immunity doctrine. The Gollnicks argued that they owed no duty to Karen because they were not her custodians, they did not create the risk of danger, and the incident did not occur on their property. The trial court denied both motions, but did certify the issues for purposes of interlocutory appeal.

## ISSUES

The issues, as certified by the trial court, are as follows:

I. Whether Indiana substantive as well as procedural law applies to the cause of action asserted by Verna and Karen against Gregory;

II. Whether an unemancipated child is barred by Indiana's parental immunity doctrine from bringing an action for negligent supervision against a parent who is a legal custodian of the minor child;

III. Whether a person who is not the parent, guardian or custodian of a nine-year-old child owes a duty to exercise reasonable care to safeguard such child or warn of dangers not created by such person;

IV. Whether landowners owe a duty to exercise reasonable care either to safeguard or to warn a child, who is visiting such landowners with

the child's parent as a guest, of dangers relating to activities of the child occurring on property other than that of the landowners.

We will discuss Issues III and IV together.

## STANDARD OF REVIEW

Our standard of review in an appeal from a denial of a summary judgment is well established. We ascertain whether the pleadings, affidavits, answers to interrogatories, responses to requests for admission, and depositions, when read in the light most favorable to the non-moving party, reveal any genuine issues of material fact, and if not, whether the trial court correctly applied the law. *Shallenberger v. Scroggins–Tomlinson, Inc.* (1982), Ind.App., 439 N.E.2d 699. In performing our function of review we stand in the position of the trial court and consider the same matters as it does. *Moll v. South Central Solar Systems, Inc.* (1981), Ind.App., 419 N.E.2d 154. We also note that, generally, summary judgment is rarely appropriate in negligence actions. *Ember v. B.F.D., Inc.* (1986), Ind.App., 490 N.E.2d 764.

## DISCUSSION AND DECISION

### ISSUE I: *Choice of Law*

Gregory contends lex loci delicti requires the application of Indiana substantive law, despite the fact that Karen, Verna, and he are residents of California. It could be argued that California law should be applied, because the issue presented is not a tort question, but immunity based upon a familial relationship, and California has an exclusive interest in governing their family relationship.

In determining the choice of substantive law in tort cases, Indiana follows the rule of lex loci delicti, the law of the place where the wrong occurred. *Umbarger v. Bolby* (1986), Ind.App., 496 N.E.2d 128; *Hubbard Mfg. Co. v. Greeson* (1986), Ind.App. 487 N.E.2d 825; *Maroon v. State, Dept. of Mental Health* (1980), Ind.App., 411 N.E.2d 404, *trans. denied.* Under this doctrine, the law of the place where the

allegedly tortious conduct occurred governs all matters going to the basis of the right of action or affecting substantive rights of the parties. *Greeson, supra.* In the instant case, Karen was injured in Indiana, so Indiana law will govern all substantive issues.[1]

In *Emery v. Emery* (1955), 45 Cal.2d 421, 289 P.2d 218, unemancipated minor children and their mother sued their father to recover for injuries suffered in an automobile accident. The parties were California domiciliaries, but the accident occurred in Idaho. Because the accident occurred in Idaho the California Supreme Court held that Idaho law should be applied regarding the negligence issue. 45 Cal.2d at 425, 289 P.2d at 221. However, concerning the issue of parental immunity the court looked to California law, because "[i]t is not ... a question of tort but one of capacity to sue and be sued and as to that question the place of injury is both fortuitous and irrelevant." (Footnote omitted.) 45 Cal.2d at 427, 289 P.2d at 222. To hold otherwise, the court reasoned, would subject the rights and duties attendant to the family relationship to constant change as family members crossed state lines during temporary absences from home.

We decline to adopt the distinction contained in *Emery, supra. Greeson, supra,* and *Maroon, supra,* make it clear that lex loci delicti governs all matters affecting the basis of the right of action or the substantive rights of the parties. This necessarily includes any questions concerning immunity from suit. *See Maroon, supra* at 412. While a different result might obtain under the so-called "modern rule" or "most significant relationship approach," because Karen could argue California's interest in governing its family relationships (*see Aurora Nat'l Bank v. Anderson* (1971), 132 Ill.App.2d 217, 268 N.E.2d 552), we need not address it. Lex loci delicti is the rule in Indiana, despite urgings to the contrary. *See Greeson, supra* at 827 n. 1; *Maroon, supra* at 417 (Ratliff, J., concurring).

1. Indiana being the forum, its law will also govern all procedural matters. *Maroon, supra.*

Because the allegedly tortious conduct occurred in Indiana, Indiana substantive law is to be applied to all substantive issues, including the question of whether Karen may maintain a cause of action against Gregory.

## ISSUE II: *Parental Immunity*

Gregory asserts Karen has no cause of action against him because of the parental immunity doctrine.

■ The doctrine of parental immunity is a judicially created rule that allows a parent immunity from suit for injuries to an unemancipated minor child. *Vaughan v. Vaughan* (1974), 161 Ind.App. 497, 316 N.E.2d 455; *Smith v. Smith* (1924), 81 Ind.App. 566, 142 N.E. 128, *trans. denied.* The doctrine has been partially abrogated. In *Buffalo v. Buffalo* (1982), Ind.App., 441 N.E.2d 711, the court held that the parental immunity doctrine does not preclude a suit for negligent injury by an unemancipated minor child against a non-custodial parent where the marriage of the child's parents was dissolved prior to the child's injury. In *Buffalo* the child was injured while he was with his father pursuant to the father's right to visitation. The court's rationale for not allowing immunity was that, when the parents' marriage was dissolved and the mother was granted custody, a new family unit was formed. Therefore, although the reasons underlying the parental immunity doctrine still applied to the mother, the same could not be said for the father because he was a non-custodial parent.

Gregory contends the holding in *Buffalo* is inapplicable to the instant case. Under the terms of the written marital settlement agreement Verna was granted physical custody of the children, but their legal custody is jointly shared by Verna and Gregory. It is for this reason that Gregory seeks to preclude the application of *Buffalo.*

We believe *Buffalo* is controlling, and we decline to carve another exception where the former spouses share legal custody of their children. The main reason behind the parental immunity doctrine, the maintenance of domestic peace and tranquility of the family, no longer existed prior to Karen's injury, and Gregory can no longer reap the benefits of the rule. *Buffalo, supra* at 713; *accord Fugate v. Fugate* (1979), Mo., 582 S.W.2d 663, 669 (court held that parental immunity doctrine "should not be extended beyond the point of that which is necessary to assist and support the functioning of an existing family unit.").

■ Gregory, being the non-custodial parent, is not entitled to parental immunity. Therefore, the trial court did not err in denying his motion for summary judgment.

## ISSUES III & IV: *Duty to Supervise/Warn; Premises Liability*

The Gollnicks argue the trial court erred in denying their motion for summary judgment in that, because they are neither the parents nor guardians of Karen, they owed no duty to either safeguard or warn her. The Gollnicks also argue that, because Karen's injury resulted from activity conducted on another's property, premises liability does not impose a duty of care.

■ Negligence is composed of three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure on the part of the defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701; *Swanson v. Wabash College* (1987), Ind.App., 504 N.E.2d 327. The primary duty of protecting children rests on their parents. *See Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280, *reh. denied,* 111 N.E.2d 713.

■ Regarding premises liability, Karen was a social guest, a licensee, of the Gollnicks. Therefore, they have a duty, as to her, to refrain from positive wrongful acts, willful or wanton misconduct, and entrapment. *Martin v. Shea* (1984), Ind., 463 N.E.2d 1092. Mere negligence is not sufficient to impose liability. *Id.* In addition, a landowner is generally not responsible for injuries suffered on abutting property. *Ember, supra.*

In *Campbell v. Northern Signal Co.* (1981), 103 Ill.App.3d 154, 58 Ill.Dec. 638, 430 N.E.2d 670, a teenaged boy was visiting his grandmother's farm with his mother. While performing chores, he came into contact with a bumblebee burrow. In an attempt to eradicate the insects the youth poured gasoline down the hole. The gasoline instantaneously ignited, burning him. The injured boy sued his grandmother on the basis of, inter alia, negligent supervision. In affirming a jury verdict for the grandmother the court recited the general rule that a landowner is not required to supervise minors invited onto his property. The court held that the presence of the boy's mother reduced the level of conduct expected from the grandmother, and it quoted from *Kay v. Ludwick* (1967), 87 Ill.App.2d 114, 119, 230 N.E.2d 494, 497: "the primary responsibility for the safety of this minor child rested with its mother. That responsibility can be shifted to the host only if it may be said that the host is at fault under some recognized theory of liability." 103 Ill.App.3d at 157, 58 Ill.Dec. at 641, 430 N.E.2d at 673. There being no other theory of liability applicable, the court noted that a directed verdict in favor of the grandmother would have been appropriate. *Accord Freeze v. Congleton* (1970), 276 N.C. 178, 171 S.E.2d 424.

From the facts presented in this case, we can perceive no legal basis for imposing liability on the Gollnicks. They were not responsible for either supervision or control of Karen, because her father, Gregory, was present, and that duty properly lies with him. He specifically gave Karen permission to go sledding that morning. The injury occurred on property abutting the Gollnicks', so premises liability cannot attach. Even if it could, we cannot say that the Gollnicks are liable as a matter of law, since a premises owner will be held responsible only if the condition which caused the child's injuries is such that the danger would not be recognized or appreciated by a child of similar age and experience. *Swanson v. Shroat* (1976), 169 Ind. App. 80, 345 N.E.2d 872. As a matter of law Karen, a nine-year-old at the time, should have been cognizant of the danger

of sledding down a curving, sloping driveway into a street, especially since she had been sledding there the night before.

Any negligence argument presupposes that the law recognizes a special relationship between Karen and the Gollnicks that would create a duty, the violation of which would create liability. There was none. In the absence of a legal relationship between Karen and the Gollnicks, the Gollnicks cannot be liable for Karen's injuries. *Swanson v. Wabash College, supra.* Therefore, it was error for the trial court to deny the Gollnicks' motion for summary judgment.

Accordingly, we affirm the trial court's ruling on Gregory's summary judgment motion, but reverse its ruling as to the Gollnicks.

Judgment affirmed in part and reversed in part.

RATLIFF, C.J., concurs with opinion.

SULLIVAN, J., dissents in part: concurs in part with opinion.

RATLIFF, Chief Judge, concurring.

My personal view that the outmoded archaic doctrine of *lex loci delicti* should be rejected in favor of the modern "most significant relationship approach" is set forth fully in my separate opinion in *Maroon v. State* (1980), Ind.App., 411 N.E.2d 404, 417–20, *trans. denied,* and noted in footnote 1 in *Hubbard Manufacturing Co. v. Greeson* (1986), Ind.App., 487 N.E.2d 825, 827. I continue to hope that our supreme court will adopt what I consider the far better rule. Recognizing, however, that *lex loci delicti* is firmly established, as of this writing, as the law in Indiana, I concur in the majority opinion in all respects.

SULLIVAN, Judge, dissenting in part and concurring in part.

I dissent with respect to affirmance of the denial of Gregory Gollnick's motion for summary judgment.

The majority applies the holding of *Buffalo v. Buffalo* (1982) 4th Dist. Ind.App., 441 N.E.2d 711. In doing so it erroneously assumes that Gregory is a non-custodial

parent. The record makes clear that Gregory and Verna had joint legal custody. Verna had mere physical custody. It is established that legal custody, whether sole or joint, carries with it not only certain responsibilities, but certain privileges as well. Among these privileges are the right to participate in decisions concerning education, religious training and the like. Indiana and California statutory provisions are strikingly similar in this respect. California law provides as follows:

"(a) The Legislature finds and declares that it is the public policy of this state to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, and to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy." Cal.Civ.Code § 4600 (West 1987 Supp.)

In keeping with this policy declaration, the California General Assembly made provision for joint legal custody and defined it:

"(5) 'Joint legal custody' means that both parents shall share the right and the responsibility to make the decisions relating to the health, education, and welfare of a child.

\* \* \* \* \* \*

(g) In making an order for custody with respect to both parents, the court may award joint legal custody without awarding joint physical custody." *Id.* at § 4600.5.

The Indiana provision, I.C. 31–1–11.5–21 (Burns Code Ed.Repl.1987) reads in part:

"(f) The court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child. As used in this section, 'joint legal custody' means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training. An award of joint legal custody does not require an equal division of physical custody of the child."

Even were we to apply the so-called "modern rule" espoused by Chief Judge Ratliff to the issue of parental immunity, it is not at all clear that *Gibson v. Gibson* (1971) 3 Cal.3d 914, 479 P.2d 648, 92 Cal. Rptr. 288, which abolished immunity remains an open invitation to child-parent negligence suits. The above quoted amendment to the California Custody statute was enunciated as a matter of policy in 1979. It might well be viewed as somewhat inconsistent with the absolute abrogation of parental immunity. Additionally, some authorities suggest that intrafamily immunity may have experienced a reincarnation of sorts. Inroads in this regard have been observed with respect to insurance exclusionary provisions. *See Employers National Insurance Co. v. Cornett* (1985) 172 Cal.App.3d 245, 218 Cal. Rptr. 185, 189.

In any event, it would seem that included in the concept of custodial parenthood, even though that custody is shared, is the right to foster a reasonably healthy and affectionate familial relationship. At least by implication, a corollary right would seem to attach—the right to be free of the divisive and accusatorial status created by a negligence lawsuit. Gregory was a custodial parent with custodial rights. For this reason *Buffalo v. Buffalo, supra,* 441 N.E.2d 711, is inapplicable.

Even if it were otherwise, a non-custodial parent is still a parent. The relationship is worthy of acknowledgment and, I think, encouragement. Unless the parental rights have been terminated, or at a minimum unless visitation and other contact has been curtailed, the non-custodial parent should have every right to the protection afforded other parents against unwarranted disruptive influences. It is of no moment that the economic party in interest may be some faceless insurance company. It is of moment that for the lawsuit to succeed, the child must assert and prove that his parent was negligent, or willful and wanton in the conduct toward the child. The relationship of a non-custodial parent with child is delicate enough as is. It is subject to stresses and impediments naturally brought about by separation and lack

of continuity. The relationship is certainly not strengthened or nurtured by adversary litigation which requires assertions that the parent lacks due care and evidences disregard for the child's safety and well-being.

In short, I dissent from the holding by the majority that a non-custodial parent is automatically shorn of parental immunity. In this regard I would decline to follow *Buffalo v. Buffalo, supra,* 441 N.E.2d 711, and would reject its rationale.

I concur in the holding which reverses the ruling upon the Motion for Summary Judgment filed by John and Margaret Gollnick.

The premises of the Gollnicks, to which Karen was an invited visitor, did not give rise to the injury. The case does not, therefore, involve any duty imposed by reason of ownership of the premises. The duty owed, if any, is that of reasonable care under the circumstances. I agree with my colleagues that, as a matter of law, no breach of Gollnicks' duty to exercise reasonable care occurred and that their motion for summary judgment should have been granted.

I would remand to the trial court with instructions to grant summary judgment for all defendants.