**Margaret A. BARNES, Appellant,**

v.

**John E. BARNES, III, Appellee.**

**No. 09A04–8807–CV–244.**

Court of Appeals of Indiana, Fourth District.

Jan. 25, 1990.

Rehearing Denied March 14, 1990.

---

Courtney B. Justice, Logansport, and Charles R. Vaughan, Vaughan and Vaughan, Lafayette, for appellant.

Nelson J. Becker, Hanna, Small, Sabatini and Becker, Logansport, for appellee.

MILLER, Judge.

The case involves a catastrophic mental illness and the expenses associated with the institutionalization of a child. In the original divorce proceedings, John E. Barnes, III was ordered to pay all of the psychiatric expenses of his then seventeen year-old daughter Polly Anna Barnes. When it appeared that those expenses would reach almost $150,000.00 a year, he petitioned the court to modify its original order, which the court did by ordering the mother, Margaret A. Barnes, to pay half of the cost. Margaret appeals claiming:

I. the trial court abused its discretion by finding changed circumstances so substantial and continuing as to make the terms of the original order unreasonable;

II. the trial court erred in failing to find the father in contempt of the original child support order;

III. the trial court abused its discretion in granting John certain rights in the determination of Polly Anna's health care;

IV. the trial court abused its discretion in failing to award her attorney fees;

We affirm.

## Facts

Millionaires John and Margaret's divorce proceeding commenced in early 1985 and was not completed until late in 1986. John's modification proceeding was filed March 20, 1987. Margaret's contempt proceeding was filed March 24, 1987. Hearings regarding both of these matters were held September 25, 1987 and December 18, 1987.

The parties' youngest daughter, Polly Anna, is the subject of this case. She was eighteen years old at the time of the present hearings. Polly Anna has two older brothers, John E. Barnes IV—age 23, and Clay T. Barnes—age 21 (ages at the time of the present hearings).

Throughout the pendency of the divorce, Polly Anna exhibited frightening behavior. She was first admitted to an inpatient psychiatric facility, the Howard Community Hospital in Kokomo, Indiana, on February 5, 1986 after attempting suicide by taking an overdose of pills. In June of 1986, she ran away from home with a boyfriend but was caught by the police, returned to her mother, and again admitted to the Howard Community Hospital. In December of 1986, she was again admitted to Howard. This time she had made superficial lacerations on her left arm and dug a hole in her left wrist with a razor blade.

Margaret asserts, and some doctors have agreed, that Polly Anna's problems are the result, at least in part, of her being sexually molested by her oldest brother (over a period of years) and sexually molested (over a period of years) and raped (several times over a few days) by her father. These allegations have yet to be proven. Margaret alludes to future court battles over these incidents. John asserts that criminal charges have not been filed but admits that a civil lawsuit, filed on Polly Anna's behalf, has been brought against him based on these allegations.

The incident involving the razor blade occurred very soon after the parents' divorce became final. Almost immediately, Polly Anna's mother committed her to long term in-patient psychiatric treatment at the Timberlawn Psychiatric Hospital in Dallas, Texas. The commitment at Timberlawn was to last two years, perhaps longer, at an approximate cost of $150,000.00 per year.

The dispute is based on the following provision in the divorce decree which required John to pay:

> All reasonable medical, dental, and optical expenses for the three (3) children until such time as their college education is completed. Husband further ordered to maintain adequate medical and hospitalization insurance coverage on said children for said period. *Husband shall pay all psychiatric bills for minor daughter, Polly Anna Barnes.* (emphasis ours)

Since the time of the trial court's decision to modify the order—by providing that the psychiatric bills be divided evenly between the parents—and this appeal was briefed. Polly Anna has been released from Timberlawn.

On March 24, 1987, Margaret filed a contempt action against John over the bills mounting up from Timberlawn. At that time the total billing from Timberlawn was approximately $22,000.00. John had tendered a check to Margaret for $18,000.00 which she refused to accept. John's health insurance provider had paid Timberlawn approximately $4,000.00. On October 2, 1987, John tendered a check to Margaret in the sum of $31,409.30 which she again refused to accept. At the time of this hearing, Margaret had paid a total of $131,740.63 for Polly Anna's psychiatric treatment.

Both parents are millionaires. John testified his net worth was in the neighborhood of $1,800,000.00. His estimated income for 1986 was $322,950.00, for 1987 it was $189,271.00, and for 1988 it was $215,000.00. Margaret received $1,781,000.00 as her portion of the marital estate in the divorce settlement. She has a total indebtedness of approximately $15,000.00 and annual living expenses of approximately $24,000.00.

Additional facts are supplied as necessary.

## I. Modification of Child Support Order

■ IND.CODE 31–1–11.5–17(a) provides that a modification of child support may be made "only upon a showing of changed circumstances so substantial and continuing as to make the terms [of the original support order] unreasonable." Changed circumstances sufficient to warrant modification do not have to be permanent in nature, but only that the change is a continuing one. *Meehan v. Meehan* (1981), Ind., 425 N.E.2d 157. The trial court should consider the totality of the circumstances when determining if a modification is warranted. *Hayden v. Hite* (1982), Ind.App., 437 N.E.2d 133. On appeal, we will reverse a modification of a child support order only for an abuse of discretion. *Hiland v. Hiland* (1984), Ind. App., 467 N.E.2d 1253 (*trans. denied*).

In determining whether a trial court has abused its discretion in modifying a child support order, we do not weigh the evidence or judge the credibility of witnesses, but consider only the evidence most favorable to the judgment together with all reasonable inferences which can be drawn therefrom. *Meehan, supra.* If, from that perspective, substantial evidence of probative value exists to support the decision of the trial court, we will affirm the decision. *Id.* Thus, an abuse of discretion will be found only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable and actual deductions to be drawn therefrom. *Kruse v. Kruse* (1984), Ind.App., 464 N.E.2d 934 (*trans. denied*).

The trial court entered the following finding of facts that were supported by evidence in the record:

20. As a result of the amended dissolution decree in this cause, which ordered [John] to pay child support, educational expenses, living expenses and property settlement. [John] has incurred debts which have substantially reduced his net worth.

21. [Margaret] has income from the property settlement which she has invested in the form of securities and investments, and further, that she has no obligation by the amended decree for support, maintenance and education of the children or health expenses for the children and particularly Polly, except that which arises by the fact that she is the mother of said children.

23. The Court further finds that the Husband's decreasing income and increasing liabilities at a time when the daughter, Polly, has been committed to Timberlawn Psychiatric Hospital for a two-year period constitutes a substantial and continuing change of circumstances which makes the terms of paragraph 12 of the amended decree of dissolution [which required John to pay all the psychiatric bills] unreasonable as it pertains to the Husband being responsible for paying the reasonable psychiatric expenses of the daughter.

We have held the deterioration of the husband's financial condition coupled with the wife's improvement in her financial situation sufficient to find a change of circumstances making an earlier support order unreasonable. *Payson v. Payson* (1982), Ind.App., 442 N.E.2d 1123. However, when we are dealing with persons of enormous wealth, it is more difficult to demonstrate changed circumstances from mere fluctuations in wealth.

■ The original decree contemplated that Polly Anna would incur psychiatric expenses. However, the provision for psychiatric care in the divorce decree was ambiguous because of its open-ended nature. In *Rohn v. Thuma* (1980), Ind.App., 408 N.E.2d 578, we held a decree that required the father to provide his sons with a four year undergraduate education was ambiguous because it failed to define the parameters of the father's liability. The sons had chosen expensive out-of-state schools while the father felt that an education at Indiana University was sufficient. The *Rohn* court quoted *Commonwealth ex rel. Larsen v. Larsen* (1967), 211 Pa.Super. 30, 234 A.2d 18, as follows:

The purpose of a support order is the welfare of the child and not the punishment of the father. It must be fair, not confiscatory in amount and intended to

provide a reasonable allowance for support, considering the property, income and earning capacity of the father, and the station of life of the family. *Rohn, supra* 408 N.E.2d at 582, 583 (Pennsylvania citations omitted.)

In the case at bar, the trial court in reviewing the evidence noted several institutions within the State of Indiana available for Polly Anna's treatment at less expense than the Timberlawn facility. However, the Barnes's station in life does factor in the propriety of expensive care for Polly Anna. *Geberin v. Geberin* (1977), 172 Ind.App. 255, 360 N.E.2d 41.

The evidence most favorable to the trial court's judgment indicates that John earned approximately $200,000.00 per year the past two years. The trial court could have found that psychiatric bills of $150,-000.00 per year would be confiscatory.

Therefore, judging from the totality of the circumstances, we hold the trial court did not abuse its discretion in finding that the father's economic decline coupled with the enormity of the psychiatric expenses constituted a change in circumstances warranting a modification. We find no error.

## II. Contempt

■ Margaret asserts the trial court erred in failing to find John in contempt for failing to pay the costs as they accrued at Timberlawn. She sets out evidence which she asserts demonstrates John was in contempt.

It is well settled that it is the province of the trial court to weigh the evidence and determine whether or not the respondent was in contempt. *Whitman v. Whitman* (1980), Ind.App., 405 N.E.2d 608. The trial court's decision will not be set aside on appeal unless there is no evidence in the record supporting it. *Id.*

The trial court made the following finding:

25. The Court finds that on the date of filing of Wife's Motion to Show Cause as to why Husband should not be held in contempt for failing to comply with the payment of psychiatric expenses incurred by the child, Polly, the amount owing for said expenses was Twenty-two Thousand Dollars ($22,000.00) and that Husband had paid the sum of Twenty-two Thousand Dollars ($22,000.00) either directly to the hospital through his insurance company or by tendering to the Wife the sum of Eighteen Thousand Dollars ($18,-000.00), which sum Wife refused to accept, and that Husband was not therefore in violation of paragraph 12 [which required John to pay all psychiatric bills] of the amended decree of dissolution.

It requires no further citation to authority that, as a court of review, we do not reweigh the evidence on appeal. We find no error in the trial court's finding that John was not in contempt of the support order.

## III. Whether the trial court abused its discretion in granting John certain rights in the determination of Polly Anna's health care?

■ Margaret asserts that the trial court's order infringes upon her statutory rights as the custodial parent to make the decisions regarding Polly Anna's health care needs. IND.CODE 31-1-11.5-21(b) provides:

Except as otherwise agreed by the parties in writing at the time of the custody order, the custodian may determine the child's upbringing, including his education, health care, and religious training, unless the court finds, after motion by a noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired.

The language of the order about which Margaret complains reads as follow:

Husband shall pay all reasonable medical, dental and hospital expenses for the three (3) children until such time as their college education is completed. Husband further ordered to maintain adequate medical, dental and hospital insurance on said children and Wife shall consult husband prior to incurring any medical, dental, hospital and psychiatric expenses not covered by insurance.

\* \* \* \* \* \*

Husband shall have the right to employ psychiatrists and other medical personnel of his choice for the purposes of examining and reporting to the Husband the present medical, psychiatric and physical condition of Polly Anna Barnes. Husband shall further have the right to consult with medical personnel presently caring for Polly Anna Barnes at Timberlawn Psychiatric Hospital, Dallas, Texas. Husband further shall have the right to have copies of all correspondence as concerns the condition of Polly Anna Barnes, and further, Wife shall receive copies of all correspondence or reports given to the Husband as concerns this Order.

\*    \*    \*    \*    \*    \*

In relation to the three (3) alternatives above [that trigger Polly Anna's release from Timberlawn], the Husband shall have the right to file a petition to terminate the care after he has received reports as hereinabove authorized; or he may file a petition to determine a proper facility to transfer the child in the event further care is needed after the succeeding year at Timberlawn Psychiatric Hospital.

First, we observe that Margaret is partially correct. By statute, she as the custodial parent has the authority to make Polly Anna's health care decisions without interference from John. This authority can only be limited upon a finding by the trial court, after motion by a noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired. I.C. 31–1–11.5–21(b).

However, we do not interpret the trial court's order as interfering with Margaret's rights and responsibilities as the custodial parent. Margaret is ordered to consult with John and otherwise keep him informed of her medical decisions. John is permitted to employ his own doctors to evaluate the propriety of these decisions. In the event John believes that Margaret's decisions are inappropriate, he may petition the court to review the situation. This is a right he has always had. We do not understand how John could exercise these rights if he is kept in ignorance about Polly Anna's condition. Margaret has cited no authority, nor are we aware of any, that prohibits the trial court from ordering her to keep John informed about Polly Anna's needs.

The trial court's order in no way restricts Margaret's custodial decision making authority. Therefore, we find no error.

### IV. Attorney Fees

Margaret asserts the trial court erred in failing to award her any attorney fees in conjunction with this action. Attorney fees are available under IND.CODE 31–1–11.5–16(a) which reads:

The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name.

The trial court has broad discretion in assessing attorney fees in marriage dissolution actions. *Hawblitzel v. Hawblitzel* (1983), Ind.App., 447 N.E.2d 1156. The trial court, in fashioning an award of attorneys' fees, must consider the resources of the parties, their economic condition, and the ability of the parties to engage in gainful employment and earn adequate income. *Baker v. Baker* (1986), Ind.App., 488 N.E.2d 361.

Margaret is a millionaire. We find no abuse of discretion in the trial court's failure to award her attorney fees.

Finding no error, we affirm.

CHEZEM and SHIELDS, P.JJ., concur in result.