John E. BARNES, III, Appellant (Defendant Below),

v.

Polly Anna BARNES, Appellee (Plaintiff Below).

No. 66A03–8910–CV–440.

Court of Appeals of Indiana, Third District.

Feb. 19, 1991.

Peter J. Rusthoven, Stanley C. Fickle, Michael A. Klein, Barnes & Thornburg, Indianapolis, Thomas C. Sopko, John C. Firth, Thomas C. Sopko Associates, South Bend, for appellant.

Charles R. Vaughan, Kelly Vaughan Busch, Cynthia L. Garwood, Vaughan and Vaughan, Lafayette, Courtney B. Justice, Elizabeth A. Justice, Logansport, for appellee.

STATON, Judge.

John E. Barnes, III appeals an adverse judgment for $3,250,000 in compensatory and punitive damages raising the following issues for our consideration:

I. Whether the trial court erred in failing to dismiss this action pursuant to the parental immunity rule for failure to state a claim upon which relief can be granted.

II. Whether the trial court erred in barring testimony and discovery relating to other alleged rapes of the plaintiff on the basis of Indiana's Rape Shield statute in a civil action for damages for Post–Traumatic Stress Disorder allegedly incurred as a result of repeated rapes by the plaintiff's father.

III. Whether the trial court erred in permitting the jury to award damages for expenses of psychiatric care already paid by the defendant.

IV. Whether the jury's award of $3,000,000 in punitive damages was excessive and violative of due process.

Because our reversal on Issue I is dispositive of this appeal, we find it unnecessary to address the remaining three issues.

This action was filed on March 12, 1987 by Polly Anna Barnes (Polly) against her father, John E. Barnes III (John). The complaint alleged that on January 2, 3, 4 and 5, when Polly was fifteen years old, she was assaulted and raped by John at the family beach house in Captiva Island, Florida.

John filed a Motion to Dismiss or for Summary Judgment, alleging that the action was barred by the parental immunity doctrine. John's affidavit filed with the motion stated that Polly is his natural daughter, that on the dates of the incidents alleged in Polly's complaint Polly was living in a home in Florida which was jointly owned by him and Polly's mother (Margaret), that he and Polly's mother were married, and that on the dates in question Polly was an unemancipated minor aged fifteen. In support of her opposition to John's motion to dismiss, Margaret tendered a lengthy affidavit which included the statement that except for four months in 1983 and a two month summer vacation in 1984, Polly and Margaret lived separate from Polly's brothers and John. The trial court denied the motion.

At the conclusion of a jury trial, Polly obtained a judgment for $250,000 in compensatory damages and $3,000,000 in punitive damages. John appeals.

When matters outside the pleadings are considered by the trial court in ruling upon a motion to dismiss, we will treat that motion as a motion for summary judgment. *Van Keppel v. County of Jasper* (1990), Ind.App., 556 N.E.2d 333, 335. In reviewing the grant or denial of a motion for summary judgment, the appellate court applies the same standard as the trial court. *Kopec v. Memorial Hospital of South Bend* (1990), Ind.App., 557 N.E.2d 1367, 1368, *transfer pending.* Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Witham v. Norfolk and Western Ry. Co.* (1990), Ind., 561 N.E.2d 484, 485. All facts and inferences to be drawn therefrom are viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a material issue must be resolved against the movant. *Witham, supra.*

John argues that Polly's action against him is barred by the parental immunity rule. The parental immunity rule is a vestige of the common law and was first explicitly recognized in Indiana in *Smith v. Smith* (1924), 81 Ind.App. 566, 142 N.E. 128. In *Smith*, the plaintiff brought a tort action against his father based upon acts of personal violence and the failure of the father to provide an education for the plaintiff when he was a child. The Court upheld the trial court's dismissal of the action, noting the rationale underlying the bar to actions by a child against his or her parent:

> It is well established that a minor child cannot sue his parent for a tort. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. An unkind and cruel parent may and should be punished at the time of the offense, if an offender at all, by forfeiting custody and suffering criminal penalties, if need be; but for the minor child who continues, it may be for long years, at home and unemancipated, to bring a suit, when arrived at majority, free from parental control and under counter influences, against his own parent, either for services accruing during infancy or to recover damages for some stale injury, real or imagined, referable to that period, appears quite contrary to good policy. *And this rule has been applied, not only in cases of excessive punishment, or other assault and battery, but to the most extreme case possible, that of the ravishment of a minor daughter by her father.*

*Id.* 142 N.E. at 128–129, *quoting* 20 R.C.L. 631 (emphasis added).

The parental immunity rule has been repeatedly reaffirmed by our courts. *See Buffalo v. Buffalo* (1982), Ind.App., 441 N.E.2d 711; *Vaughan v. Vaughan* (1974), 161 Ind.App. 497, 316 N.E.2d 455; *Hunter v. State* (1977), 172 Ind.App. 397, 360 N.E.2d 588, *transfer denied, cert. denied* 434 U.S. 906, 98 S.Ct. 306, 54 L.Ed.2d 193.

Polly argues, however, that in recent years the rule has been "significantly eroded by exceptions," and therefore the trial court correctly held the rule to be inapplicable here. Polly points to the guest statute, I.C. 9–3–3–1, and *Buffalo, supra* as evidence of the "erosion" of the rule. She asserts that her case is similar to *Buffalo*, wherein this court recognized that the parental immunity rule does not apply to bar an unemancipated child's action where the child brings suit against a non-custodial parent where the parents' marriage has been dissolved. The *Buffalo* court found the rationale underlying the rule to be inapplicable to such a situation:

> The reasons underlying the parental immunity rule ... cannot reasonably be said to apply to father. He is a non-custodial parent. The peace and tranquility of this marriage had been broken irretrievably before Chad was injured. There is no longer any reason for the enforcement of the immunity rule for the father's benefit.

441 N.E.2d at 713.

Polly argues that Margaret and John's *de facto* separation broke the peace and tranquility of the family, as demonstrated by their subsequent divorce. *See Barnes v. Barnes* (1990), Ind.App., 549 N.E.2d 61, *transfer denied.* Thus, she contends that the exception in *Buffalo* should be extended to this case.

This case does not fall within the exception delineated in *Buffalo.* At the time of the alleged tortious acts, John and Margaret were married; John and Margaret had joint custody of Polly by virtue of their marriage; and they were together with Polly as a family in Florida.

Polly next invites us to abolish the parental immunity rule, noting its "erosion" and arguing that it no longer serves the needs of society. We do not find the fact that the General Assembly chose to make an exception to the rule in the case of wanton or willful misconduct in the operation of a motor vehicle persuasive in determining

whether to abolish parental immunity.[1] We presume that the legislature did not intend to change the common law beyond what it declares expressly or by unmistakable implication. *Northern Indiana Public Service v. Citizen's Action Coalition* (1989), Ind., 548 N.E.2d 153, 159. Thus, we do not find that the guest statute evinces a legislative disapproval of parental immunity. Nor do we find the limited exception delineated in *Buffalo* to be a harbinger of the demise of the parental immunity doctrine.

On the contrary, the *Smith* court clearly contemplated suits based on allegations such as those in this case—i.e. "the ravishment of a minor daughter by her father;" *Smith, supra*, 142 N.E. at 129—when it considered whether to follow the parental immunity rule. Although cases such as this are disturbing, the wronged party is not without a remedy. We agree with the *Smith* court that the proper remedy is to cause the offender to forfeit custody and be incarcerated under the criminal processes rather than to allow the victim to seek monetary compensation. The offender is thus removed from society, at least for a time, and the chances of a repeat offense are considerably decreased. Moreover, as the father of the victim, the child abuser or child molester still retains at least a partial responsibility to pay for the psychological and medical treatment of the child which was necessitated by his deviant conduct. Such was the case here, where John paid over $160,000 for Polly's psychiatric care and institutionalization.

We realize that if we were to abolish parental immunity, it would be possible for the offender to be tried both civilly and criminally, thereby requiring him to pay his debt to both society and the individual victim. However, we are also concerned with the impact which the recognition of a child's cause of action in tort against her parent would have on the family as a unit. To this end, we join the *Smith* court in our reluctance to disturb the fragile balance which maintains this important institution, and echo the sentiments which ring as true today as they did in 1924:

> From our knowledge of the social life of today, and the tendencies of the unrestrained youth of this generation, there appears to be much reason for the continuance of parental control during the child's minority, and that such control should not be embarrassed by conferring upon the child a right to civil redress against the parent under the circumstances stated in the question we are now considering. In our opinion, much reason exists for maintaining the sound public policy, which, as stated, underlies the rule which denies such redress. Extreme cases may arise, where it may seem harsh to deny the right, but we are governed by recognized rules, which must be uniformly applied. On the whole it seems far better to rely on the criminal law and the equity powers of the court to protect the child, where parental affection fails, even if they afford no redress for past wrongs, than to abandon the rule under consideration.

*Smith, supra*, 142 N.E. at 129.

Although this is certainly a case where denial of civil redress might seem harsh, we deem a wholesale abolition of the parental immunity rule to be unwise, and we cannot find that the interest of consistency is served by adjudicating suits between parent and child on a case-by-case basis.

Accordingly, we reverse the judgment of the trial court and remand with instructions to enter a judgment of dismissal.

GARRARD, J., concurs.

CONOVER, J., dissents and files separate opinion.

---

1. Our guest statute, IC 9–3–3–1, provides in relevant part:
    (b) the owner, operator, or person responsible for the operation of a motor vehicle is not liable for loss or damage arising from injuries to or the death of:
    (1) his parent ...
    (3) his child or stepchild ...
resulting from the operation of the motor vehicle which the parent, ... child or stepchild ... was being transported without payment therefor in or upon the motor vehicle, unless the injuries or death are caused by the wanton or willful misconduct of the operator, owner, or person responsible for the operation of the motor vehicle.

CONOVER, Judge, dissenting.

I respectfully dissent.

A young girl has been repeatedly raped, sodomized, forced to perform fellatio, maliciously bitten, and brutalized over a 4 day period while held hostage by an adult rogue male run amok. The majority would apply the parental immunity doctrine, exempting him from liability and the civil punishment the jury imposed upon him for this unspeakable outrage simply because the perpetrator was the child's natural father. I dissent from this view because I believe (a) the parental immunity doctrine currently does not grant civil immunity to parents who perpetrate sexual felonies upon their children, and (b) even if that were true, the facts here put this case clearly within a recognized exception to that doctrine.

The purpose of the parental immunity doctrine is to preserve domestic peace and tranquility, proper parental discipline and control, and family unity and harmony. 67A C.J.S. *Parent & Child* § 129, p. 508. Because the family unit is the foundation upon which any civilized society builds, preservation of that unit is in the public interest. Society among other things relating to child rearing recognizes the need for parents to impose reasoned discipline upon their children from time to time as a necessary part of raising them from infancy to responsible, law abiding adulthood. For this primary reason, the parental immunity doctrine is recognized by the courts. It protects parents from frivolous lawsuits by their children seeking redress for the imposition of parental discipline.

Immunity from civil suit for the parent's commission of sexual transgressions upon his children simply does not exist under the mores of modern society, regardless of *Smith's* dicta it is ancient learning the parental immunity rule

> ... has been applied, not only in cases of excessive punishment ..., but to the most extreme case possible, that of the ravishment of a minor daughter by her father.

*Smith v. Smith* (1924), 81 Ind.App. 566, 142 N.E. 128–129. Society's current attitude toward the raising and nurturing of children is readily discernible from the vast array of social services it currently provides to neglected and abused children.

When our supreme court abrogated the doctrine of interspousal immunity in *Brooks v. Robinson* (1972), 259 Ind. 16, 284 N.E.2d 794, it pointed out the fallacy of the argument the doctrine served the public interest. The court found the doctrine could not be upheld "under the guise of maintaining the peace and harmony of the marriage" in interspousal tort cases, relying on Professor Prosser's argument it was fallacious to reason the doctrine maintained marital peace and harmony "on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed.... Prosser, Law of Torts, 863 (4th Edit.1971)." *Brooks*, 284 N.E.2d at 796. Likewise here.

The parental immunity doctrine is judge-made law. As Justice Hunter reflected in *Brooks*

> Judicial devotion to the doctrine of *stare decisis* is indeed a justifiable concept to be followed by our courts. However, it cannot and must not be so strictly pursued to the point where our view is opaqued and reality disregarded. To do so is to envision the common law to be as immutable as the laws of the Medes and Persians, and thus render our system of jurisprudence forever impotent. The strength and genius of the common law lies in its ability to adapt to the changing needs of the society it governs....
>
> We cannot close our eyes to the legal and social needs of our society, and this Court should not hesitate to alter, amend, or abrogate the common law when society's needs so dictate.

*Brooks*, 284 N.E.2d at 797. To argue any peace or tranquility worth preserving remains between parent and child after the parent subjects the child to felonious sexual battery is equally as fallacious. Finally, the abrogation of the parental immunity doctrine in such cases would act as a further deterrent to the imposition of such cruelty upon children by their parents. In my view there is not one compelling reason

for imposing that doctrine to the child's detriment in sexual battery cases. Nothing is lost and deterrent value is gained by the doctrine's abolition.

Regardless, this case falls squarely within a recognized exception to the parental immunity doctrine in this state. Polly's mother and father were separated and had been living apart for much of their marriage. Polly lived with her mother in Florida and her brothers lived with their father in Indiana, except for 4 months in 1983 and a 2 month summer vacation in 1984. These events transpired over a four day period from January 2 through 5 in 1987 while John was on vacation. He and Polly, his 15 year old daughter, were in the Captiva Island house alone only because John's then wife had attempted suicide and was in the hospital recovering. Except for the formality of a divorce decree, the circumstances are identical to those in *Buffalo v. Buffalo* (1982), Ind.App., 441 N.E.2d 711. Without question, John was a non-custodial parent. He had not been around to participate in the raising of Polly for most of Polly's life and for more than 2 years from the last time the family lived together under one roof. Also, it is readily apparent from the morbid facts of this case, the peace and tranquility of this marriage had been broken irretrievably many years before John perpetrated the sex crimes of which his daughter civilly complains. Clearly, no reason for imposition of the parental immunity doctrine exists under these facts.

For these reasons I dissent. I would affirm the trial court in all respects.